[No. 13780-8-I. Division One. July 30, 1986.]

JERROLD W. SMITH, *Appellant*, v. LARRY MOUNT, *Respondent*.

624

*William J. Johnston* and *Matthew W. Peach,* for appellant.

*John Patrick Cook* and *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.,* for respondent.

Cole, J.*—Pursuant to the seizure and forfeiture provisions of the Uniform Controlled Substances Act, the sheriff of Whatcom County, Larry Mount, ordered that a building used in a marijuana growing operation was forfeited. The trial court upheld the forfeiture, and the building's owner,

---

*This appeal was heard by a Supreme Court Justice and two retired Superior Court Judges sitting as Court of Appeals Judges Pro Tempore in Division One.

Jerrold W. Smith, appeals, arguing that the statute did not apply to real property and that the forfeiture hearing process was unconstitutional. Mount cross–appeals, arguing that the trial court erred by not awarding the sheriff's department its attorney's fees under the statute as the "prevailing party" at trial. We affirm.

## FACTS

Jerrold Smith was arrested on February 3, 1983, when sheriff's deputies uncovered a large marijuana–growing operation located in a metal pole building on his property. On February 18, Smith was served with a notice of seizure and forfeiture of the pole building. The notice included the following advisement:

> Any person claiming ownership or right of possession in the above–described property . . . is entitled to a reasonable opportunity to be heard as to the claim of right. The hearing shall be before Larry E. Mount, the chief law enforcement officer of Whatcom County, Washington, or his designate, *except that any person asserting a claim of right may remove the matter to a court of competent jurisdiction if the aggregate value of the article . . . is more than five hundred dollars ($500).*

(Italics ours.)

It is undisputed that the pole building was worth well in excess of $500, but Smith did not ask for removal. At his request, a hearing was held on April 26, 1983, with Sheriff Mount presiding. Exhibits were entered into evidence and testimony was given by a sheriff's deputy, who stated that, in his opinion, the sole purpose of the pole building was for the manufacture of marijuana. Smith appeared pro se, and did not introduce any evidence or examine any witnesses. Sheriff Mount entered findings of fact and conclusions of law, determining that the pole building was used as a "container" and constituted "equipment of any kind" used for the manufacture of a controlled substance in violation of RCW 69.50, and was therefore forfeited. The pole building was later destroyed by the sheriff's department.

Smith filed a petition in superior court seeking reversal

of the sheriff's decision. He alleged that the sheriff's findings were not supported by the evidence, and that the hearing provided by the statute was unconstitutional. Smith's claims were denied by the trial court. He then brought a motion to dismiss on the ground that the forfeiture was the result of an illegal search. That motion, along with his subsequent motion for reconsideration, was also denied.

## COMBINATION OF FUNCTIONS

Smith argues that the forfeiture hearing procedure provided by the statute is unconstitutional. The statutory scheme, he argues, combines investigatory, prosecutory and adjudicatory functions all in the office of the chief law enforcement officer of the seizing agency, thus violating the separation of powers doctrine. In addition, he argues, the chief law enforcement officer has an economic incentive to find in favor of forfeiture when presiding over a forfeiture proceeding, since the statute provides that the seizing agency may use the forfeited property or sell the property and use the proceeds to offset the cost of its narcotics investigation. This pecuniary bias, Smith maintains, violates the appearance of fairness doctrine and deprives the claimant in a forfeiture hearing of the constitutional right to a neutral and disinterested decisionmaker.

 The separation of powers doctrine does not create exclusive spheres of competence in each branch of government nor was it intended to do so. *Zylstra v. Piva,* 85 Wn.2d 743, 750, 539 P.2d 823 (1975). However, when a combination of functions exists in one agency, a court is often asked to determine whether the agency's ability to deal fairly with parties before it in an adjudicatory proceeding has been impaired by its nonadjudicatory functions. Nevertheless, the mere combination of functions, without more, does not constitute a due process violation by creating an unconstitutional risk of bias. *Withrow v. Larkin,* 421 U.S. 35, 43 L. Ed. 2d 712, 95 S. Ct. 1456 (1975).

 The appearance of fairness doctrine provides addi-

tional protection by requiring that the tribunal that hears a matter must not only act fairly but must also do so with the appearance of fairness. *Harris v. Hornbaker,* 98 Wn.2d 650, 658 P.2d 1219 (1983). Again, however, a mere combination of functions will not suffice to invoke the doctrine without a showing of bias. *State Med. Disciplinary Bd. v. Johnston,* 99 Wn.2d 466, 479, 663 P.2d 457 (1983); *State ex rel. Beam v. Fulwiler,* 76 Wn.2d 313, 456 P.2d 322 (1969).

Although one who prejudges adjudicative facts is disqualified from acting in a quasi–judicial function because of bias, mere exposure to adjudicative facts is not a disqualification. *Withrow v. Larkin, supra.* In *Withrow,* a state board heard evidence about Dr. Larkin, then sent him notice of a "contested hearing" to determine whether his license to practice medicine should be suspended for violation of state statutes. The Court held that, although the board had heard testimony on the very facts to be adjudicated, there was no disqualifying prejudgment since it had taken no position other than to call for a hearing on the basis of "probable cause" to believe Larkin had violated the statutes. *Withrow,* at 55.

Likewise, in the case at bar, the fact that Sheriff Mount was the finder of probable cause to seize the pole building was insufficient to disqualify him from participating in the forfeiture proceeding.

An interest whereby one stands to gain or lose by a decision will also call for disqualification in a quasi–judicial proceeding. *Ritter v. Board of Comm'rs,* 96 Wn.2d 503, 512, 637 P.2d 940 (1981). Typically, the decisionmaker is biased because of a direct or indirect personal pecuniary interest in the outcome of the hearing. *See, e.g., Connally v. Georgia,* 429 U.S. 245, 50 L. Ed. 2d 444, 97 S. Ct. 546 (1977) (justice of the peace paid fee for each search warrant issued). However, bias was found where no personal gain to the adjudicator was involved in *Ward v. Monroeville,* 409 U.S. 57, 34 L. Ed. 2d 267, 93 S. Ct. 80 (1972).

The disposition of property in a forfeiture proceeding is governed by RCW 69.50.505(f). The seizing agency

may (1) retain the property, for example an automobile, for official use or (2) sell the property and use the proceeds to offset the cost of the investigation leading to the seizure and the other costs associated with the seizure and prosecution of the forfeiture action. RCW 69.50.505(f)(1), (2).

Thus, it might be argued that the seizing agency could use the forfeiture procedure as a device to contribute to its drug enforcement war chest. However, regardless of what economic incentives the statutory scheme might otherwise create for the officer presiding in a forfeiture hearing, Sheriff Mount had no pecuniary interest, personal or otherwise, in the forfeiture of Smith's pole building. The pole building was destroyed since it was appurtenant to real property and could not be sold or put to any useful purpose by the sheriff. Therefore, the sheriff had no bias that denied Smith the benefit of a neutral and disinterested decisionmaker, and the mere combination of functions was insufficient to raise separation of powers or appearance of fairness concerns.

Moreover, since the pole building was worth in excess of $500, Smith had the option of removing the proceeding to a court of competent jurisdiction before, according to his argument, an unbiased judge, yet chose not to do so. Consequently, he should not be heard to complain that he was denied a fair hearing. *See In re Borchert,* 57 Wn.2d 719, 359 P.2d 789 (1961).

PROPERTY SUBJECT TO FORFEITURE

Smith contends that the forfeiture provisions of the Uniform Controlled Substances Act only allow for the seizure and forfeiture of personalty, not realty, and thus the pole building was not subject to forfeiture.

The statute defines drug paraphernalia broadly to include equipment, products and materials of any kind used or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, storing or concealing a controlled substance. RCW 69.50.102. The statute lists the following as subject to seizure and forfeiture:

(1) All *controlled substances* which have been manufactured, distributed, dispensed, or acquired in violation of this chapter;

(2) All raw materials, products, *and equipment of any kind which are used, or intended for use, in manufacturing,* compounding, processing, delivering, importing, or exporting *any controlled substance* in violation of this chapter;

(3) All *property which is used, or intended for use, as a container for* property described in paragraphs (1) or (2);

(Italics ours.) RCW 69.50.505(a), in part.

The building at issue here was entirely utilized to contain and conceal a large marijuana–growing operation and was uniquely suited for that purpose. Although the structure was 10 by 48 feet, it had no windows, but was equipped with built–in fans, humidifiers and artificial growing lights. Moreover, it did not appear that the building was ever intended for any other purpose. Aside from the lack of windows, access was through a single, standard–sized door, unlike a barn, garage or storage shed that would normally have a large overhead door to permit the passage of vehicles or other large equipment.

▆ In the language of RCW 69.50.505(a)(1), (2) and (3), the building was quite literally "property which [was] used, or intended for use, as a container for" "controlled substances" and "equipment . . . used . . . in manufacturing . . . controlled substance[s]." RCW 69.50.505(a)(1)–(3). While paraphernalia might typically be personalty, the statutory language is broad enough, in these unique circumstances, to include the pole building, although it was appurtenant to real property.

Lastly, based upon the following statement at the forfeiture hearing, Smith maintains that the lawfulness of the search of his property was raised at the forfeiture proceeding, but was not ruled upon by Sheriff Mount and that the evidence in the record is not sufficient to support a finding that the search was legal:

My name is Jarrold [*sic*] W. Smith, 8415 Carl Road. Yes I object to the seizure of this building through [*sic*] the fact that we are appealing the search warrant which would in turn make it illegal to search and seizure [*sic*].

The lawfulness of the search warrant was subsequently upheld by this court in a related case, *State v. Smith,* 39 Wn. App. 642, 694 P.2d 660 (1984). Moreover, the issue was not properly raised by Smith at the forfeiture proceeding and Smith did not provide Sheriff Mount with an adequate basis to rule on the issue.

### ATTORNEY'S FEES

Sheriff Mount cross–appeals, assigning error to the trial court's denial of attorney's fees to the sheriff's department as the "prevailing party" in the trial court. Mount relies upon the following provision in RCW 69.50.505(e):

> In a court hearing between two or more claimants to the article or articles involved, the prevailing party shall be entitled to a judgment for costs and reasonable attorney's fees.

Mount maintains that, since the trial court upheld the forfeiture of the property to the sheriff's department, the statute required the court to award to the sheriff attorney's fees as the prevailing party. We disagree.

█ Subsection (e) provides further that:

> The seizing law enforcement agency shall promptly return the article or articles to the claimant upon a determination by the administrative law judge or court that the claimant is the present lawful owner or is lawfully entitled to possession thereof . . .

The "seizing law enforcement agency"—in this case the sheriff's department—is distinguished by the statute from one who claims a right of ownership or possession in the property. The "court hearing between two or more claimants" contemplated by the statute is not a contest between the seizing agency and the person from whom the property was seized. Sheriff Mount, therefore, was not a "claimant" as that term is used in the statute, and, even though the sheriff's department prevailed in the trial court, it cannot

recover attorney's fees.

Accordingly, the judgment of the trial court is affirmed.

SCHUMACHER and UTTER, JJ. Pro Tem., concur.

Reconsideration denied September 15, 1986.

Review denied by Supreme Court December 2, 1986.