[No. 60982-9. En Banc. December 8, 1994.]

GEORGE B. TELLEVIK, *as Chief of the State Patrol*, ET AL, *Appellants*, v. REAL PROPERTY KNOWN AS 31641 WEST RUTHERFORD STREET, ET AL, *Respondents*.

*Christine O. Gregoire, Attorney General,* and *Roselyn Marcus, Assistant; Driano & Sorenson* and *Dominick V. Driano,* for appellants.

*Allen M. Ressler* and *George Bianchi,* for respondents.

*Richard J. Troberman* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae for respondents.

JOHNSON, J. — This is the second appeal in a drug forfeiture action involving residential property owned by Respondents Donald and Janet Pearson. At issue is the validity of this court's constitutional holding in the prior appeal in light of a recent United States Supreme Court decision, and the meaning of certain language in this court's decision in the prior appeal.

## FACTS

On September 26, 1989, members of the Eastside Drug Task Force executed a warrant to search residential property located at 31641 West Rutherford Street in Carnation, Washington. At the time of the search the property was owned by Donald and Janet Pearson and leased to Stephen Cimbalista. The search uncovered a marijuana growing operation in the basement. Officers seized more than 30 mature marijuana plants, approximately 65 marijuana buds, and

various fans, timers and lights. Based on the evidence uncovered during the search, Donald Pearson and Cimbalista were arrested and subsequently convicted of possession with intent to manufacture marijuana, in violation of RCW 69.50.401(a).

On April 13, 1990, the chief of the Washington State Patrol filed a complaint for forfeiture in rem against the Pearsons' property at 31641 West Rutherford Street. At an ex parte hearing the same day, the judge found probable cause to believe the property was subject to forfeiture under RCW 69.50.505 and signed the warrant of arrest in rem. The State then filed a lis pendens against the Pearsons' interests in the property and a "notice of seizure and intended forfeiture". The notice of seizure stated that any person claiming ownership in the property "shall be afforded a hearing thereon if they notify the Washington State Patrol in writing . . . within ninety (90) days of the seizure of said real property". Clerk's Papers, at 16.

The Pearsons filed separate answers to the notice of seizure and moved to dismiss the complaint on the ground that the forfeiture statute is unconstitutional on its face and as applied. Janet Pearson additionally moved to dismiss based on the innocent owner provisions of RCW 69.50.505(a)(8)(i). The trial court granted both motions, quashed the warrant for arrest in rem, and canceled the lis pendens. The State appealed directly to this court. That appeal was consolidated with another forfeiture action involving property owned by Charles and Janet Wilson at 9209 218th N.E. in Redmond.

On October 15, 1992, this court held RCW 69.50.505(b) was constitutional as applied to the facts of this case, and, as construed, constitutional on its face. *Tellevik v. 31641 W. Rutherford St.*, 120 Wn.2d 68, 838 P.2d 111, 845 P.2d 1325 (1992) (*Tellevik* I). Construing the statute, this court found the term "seizure" establishes only an inchoate property interest in the seizing agency. In its discussion of the claimants' due process argument, the court explained, "[c]laimants are entitled to a full adversarial hearing within 90 days if they contest the seizure. RCW 69.50.505(e)". *Tellevik* I,

120 Wn.2d at 86. Four paragraphs later, the court again stated, "the statute requires a full adversarial hearing with judicial review within 90 days of the seizure of real property if the claimant notifies the seizing agency in writing". *See Tellevik* I, causes 57566-5, 57763-3 (filed Oct. 15, 1992), slip op. at 24.

The Wilsons moved for reconsideration, arguing this court had misread RCW 69.50.505(e).[1] On February 12, 1993, the court denied the motion for reconsideration but amended the second sentence quoted above, deleting the words "of the seizure of real property". The revised sentence read, "the statute requires a full adversarial hearing with judicial review within 90 days if the claimant notifies the seizing agency in writing". Order Clarifying Op. and Denying Mots. for Recons. and Reh'g, at 2; Clerk's Papers, at 29-30. The court also added a citation to RCW 34.05.419 following this sentence. The case was then mandated on February 16, 1993.

Nearly 6 months later, in August 1993, the State requested the Superior Court set a trial date for the forfeiture action involving the Pearsons' property. On August 13, 1993, the court set trial for February 15, 1994. Five days later the Pearsons moved to dismiss the forfeiture action, arguing this court's decision in *Tellevik* I required the hearing to be held within 90 days from the date of the mandate and the State failed to act within this period. The trial court agreed and granted the Pearsons' motion to dismiss.

The State then initiated this appeal, alleging the trial court erred in dismissing the State's forfeiture action because the claimants were not given a hearing within 90 days of the mandate issued in *Tellevik* I. In their reply brief, Respondents raise the issue whether *Tellevik* I is still good law in

---

[1]RCW 69.50.505(e) states:

"If any person notifies the seizing law enforcement agency in writing of the person's claim of ownership or right to possession of items specified in . . . (a)(8) of this section within . . . ninety days in the case of real property, the person or persons shall be afforded a reasonable opportunity to be heard as to the claim or right. . . ."

light of a recent United States Supreme Court decision invalidating a similar seizure action. *United States v. James Daniel Good Real Property*, 510 U.S. 43, 126 L. Ed. 2d 490, 114 S. Ct. 492 (1993). The State and Respondents disagree as to whether the Supreme Court's decision undermines this court's holding in *Tellevik* I. Therefore we first address the continuing validity of *Tellevik* I in light of *Good*.

ANALYSIS

I

In December 1993, 10 months after this court mandated *Tellevik* I, the United States Supreme Court decided *United States v. James Daniel Good Real Property*, 510 U.S. 43, 126 L. Ed. 2d 490, 114 S. Ct. 492 (1993). Like *Tellevik* I, *Good* involved a residential property seizure pursuant to drug forfeiture laws. In *Good*, police officers executed a warrant to search James Daniel Good's residential property. The search uncovered over 80 pounds of marijuana, vials containing hashish oil, and other drug paraphernalia. *Good*, 126 L. Ed. 2d at 498. Good was subsequently convicted of promotion of a harmful drug, sentenced to 1 year in jail and 5 years' probation, and fined $1,000.

Four and one-half years later, the United States filed an in rem action, seeking to forfeit Good's house and property under the federal drug forfeiture statute. *Good*, 126 L. Ed. 2d at 498. In an ex parte proceeding, a United States magistrate issued a warrant of arrest in rem, authorizing seizure of the property. Three days later the government took control of Good's property, executing an occupancy agreement which permitted the tenants to remain on the premises, but which directed the payment of future rents to the United States Marshal. *Good*, 126 L. Ed. 2d at 499.

The Supreme Court rejected the government's seizure of Good's property, holding the ex parte procedure violated the due process clause of the Fifth Amendment. Absent exigent circumstances, explained the Court, due process prohibits the government from seizing real property without first affording

the owner notice and an opportunity to be heard. *Good*, 126 L. Ed. 2d at 508-09.

The Pearsons contend *Tellevik I* is no longer good law given the Supreme Court's decision in *Good*. We disagree. *Tellevik I* is distinguishable both on its facts and in the type of seizure authorized under the state and federal statutes. Consequently, *Tellevik I* does not need to be reconsidered for the purposes of this appeal.

In *Good*, the government seizure addressed by the Court included actual control over the claimant's property. "Seizure", explained the Court, included,

> not only the right to prohibit sale, but also the right to evict occupants, to modify the property, to condition occupancy, to receive rents, and to supersede the owner in all rights pertaining to the use, possession, and enjoyment of the property.

*Good*, 126 L. Ed. 2d at 503-04. The Court rejected ex parte seizures in a civil forfeiture action because the government had means, "short of seizure, to protect its legitimate interests in forfeitable real property". *Good*, 126 L. Ed. 2d at 507. According to the Court, these means included filing a lis pendens, as well as obtaining restraining orders or additional search and arrest warrants. *Good*, 126 L. Ed. 2d at 506. Given these means, "[t]here [was] no reason to take the additional step of asserting control over the property without first affording notice and an adversary hearing". *Good*, 126 L. Ed. 2d at 507.

In *Tellevik I*, the State's seizure action was consistent with those means permitted under *Good* without a predeprivation opportunity to be heard. The State initiated the forfeiture action by filing a summons and complaint. The judge issued an ex parte warrant of arrest in rem and the State filed a lis pendens. However, unlike the federal government in *Good*, the State did not take control of the premises. Instead, the lessees were permitted to remain on the premises and the Pearsons continued to collect the rent.

Moreover, this court specifically rejected a broad definition of seizure in order to preserve the constitutionality of

the state statute. This court held that "seizure", as it is used in the context of RCW 69.50.505, "establish[es] only an inchoate property interest in the seizing agency . . .", and does not itself "allow the seizing agency to remove the occupants from physical possession of the property". *Tellevik* I, 120 Wn.2d at 85.

This court then further limited the scope of government control of the seized property by construing the statute so as to provide a prompt postseizure process. Under RCW 69.50.505:

> Once the property has been seized, the seizing agency may take further action to remove the occupants or enter into an occupancy agreement only upon further order of the court following notice and an opportunity for the property owners to be heard. Claimants are entitled to a full adversarial hearing within 90 days if they contest the seizure.

*Tellevik* I, 120 Wn.2d at 86. Thus, unlike the federal forfeiture statute, the Washington statute does not permit the State to take actual possession until after a full adversarial hearing. Consequently, *Tellevik* I is still good law and controls the outcome of this second appeal.

## II

### A

We next determine whether the trial court properly dismissed the forfeiture action because the Pearsons were not afforded a hearing within 90 days of the mandate in *Tellevik* I. The State contends this court's language in *Tellevik* I, that "[c]laimants are entitled to a full adversarial hearing within 90 days if they contest the seizure", *Tellevik* I, 120 Wn.2d at 86, was dicta and should not have been relied upon by the trial judge.[2]

 The State is plainly wrong. The fundamental issue in *Tellevik* I was whether the seizure provisions of the state civil forfeiture statute afforded claimants adequate due process protection. We recognized in *Tellevik* I that due pro-

---

[2]Curiously, the State now takes and argues the position advocated by the claimants (the Wilsons) in the prior appeal, and which this court rejected in the motion for reconsideration in *Tellevik* I.

cess generally affords an individual notice and an opportunity to be heard when the government deprives the individual of a life, liberty, or property interest. *Tellevik I*, 120 Wn.2d at 82-83; *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 94 L. Ed. 865, 70 S. Ct. 652 (1950). The amount and type of process due an individual corresponds to the nature of the interest and the severity of the deprivation. *See Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976). We further recognized, absent exigent circumstances, "*some type of hearing* prior to a deprivation is required by due process". *Tellevik I*, 120 Wn.2d at 82.

In *Tellevik I*, we found the ex parte proceeding provided by the Washington civil forfeiture statute adequate because the deprivation was minimal and because the claimant was afforded a prompt postdeprivation opportunity to be heard. The statute at issue, RCW 69.50.505, provides a claimant minimal due process protection, requiring only an ex parte proceeding prior to state seizure of real property. RCW 69.50.505(b). However, the statute also significantly restricts the State's control of the property once seizure occurs. The statute effectively limits the State's "seizure" action to the filing of a lis pendens, and it expressly prohibits the State from "transfer[ring] or otherwise convey[ing] [the property] until ninety days after seizure or until a judgment of forfeiture is entered, whichever is later". RCW 69.50.505(b). Therefore, at the seizure stage of a forfeiture action under RCW 69.50.505, a claimant's right to enjoy, use, and benefit from the real property is not affected.

So as to preserve the constitutionality of the statute, this court further construed the term "seizure" to "establish only an inchoate property interest in the seizing agency", and explained, "a seizure, itself, does not allow the seizing agency to remove the occupants from physical possession of the property". *Tellevik I*, 120 Wn.2d at 85-86.

We also recognized that where a predeprivation hearing is ex parte, a prompt postdeprivation hearing is an integral component of due process. This court construed the forfei-

ture statute so as to entitle claimants "to a full adversarial hearing within 90 days if they contest the seizure" and placed the burden "upon the seizing agency to prove the real property is subject to seizure". *Tellevik* I, 120 Wn.2d at 86.

Contrary to the State's assertion, the 90-day hearing requirement articulated in *Tellevik* I is *not* dicta, but is, instead, central to its holding. This result is consistent with the Supreme Court's recent decision in *United States v. James Daniel Good Real Property, supra,* and with prior federal due process decisions. In *Good*, the Court explained:

> Whether the seizure of real property for purposes of civil forfeiture justifies such an exception [to the general prepdeprivation hearing rule] requires an examination of the competing interests at stake, *along with the promptness and adequacy of later proceedings.*

(Italics ours.) *Good*, 126 L. Ed. 2d at 503. *See also Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 551, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985) (Marshall, J., concurring in part) ("[t]he adequacy of the predeprivation and postdeprivation procedures are inevitably intertwined").

It is clear had we not construed seizure as we did in *Tellevik* I, *Good* would require a predeprivation hearing as a matter of federal constitutional due process under the Fifth and Fourteenth Amendments. However, the degree of deprivation triggers the amount of due process required in a particular case, and, in this case, due process is satisfied by a prompt postdeprivation hearing.

## B

■ Finding the 90-day hearing limitation is applicable to this appeal, we next address whether the trial court properly dismissed the forfeiture action. The mandate in *Tellevik* I was issued on February 16, 1993. The Pearsons were therefore entitled to a full adversarial hearing within 90 days of the issuance of the mandate, or, in other words, by May 17, 1993. The State ignored the clear and unambiguous language in *Tellevik* I and waited nearly 6 months before *obtaining* a trial date.

The State claims the delay occurred because the State was waiting for the Pearsons to file a petition for a writ of certiorari in the United States Supreme Court, and the State, therefore, took no action "until after the time to [petition] the U.S. Supreme Court had run". Opening Br. of Appellants, at 7. We find this assertion misleading and without merit. The State does not have the power to ignore the statutory limitations on a hearing date on the chance the Respondents would petition for certiorari. Moreover, the Pearsons had 90 days in which to petition the Supreme Court. *See* 28 U.S.C. § 2101(c). Even if, for the sake of argument, the State was justified in waiting 90 days until the time to petition the Supreme Court had run, it was certainly not justified waiting nearly 3 additional months before requesting a trial date.

Lastly, the State argues the trial court should not have dismissed the forfeiture action even if there is a 90-day hearing requirement. The State contends dismissal with prejudice is a harsh sanction and it is not authorized under any statute, rule, or constitutional provision. The State cites to *Good* for the proposition that if a statute does not specify a consequence for noncompliance with internal timing provisions, the court cannot fashion its own coercive sanctions. *Good*, 126 L. Ed. 2d at 509-10.

In *Good*, the government initiated the forfeiture within the 5-year statute of limitations for drug forfeiture actions, but failed to comply with "a series of internal requirements relating to the timing of forfeitures". *Good*, 126 L. Ed. 2d at 509. After reviewing the nature and function of the internal requirements, the Court concluded "the courts should not dismiss a forfeiture action for noncompliance". *Good*, 126 L. Ed. 2d at 510. The Court explained:

> Because [the relevant procedural laws incorporated by the forfeiture statute] contain[ ] a statute of limitations — the usual legal protection against stale claims — we doubt Congress intended to require dismissal of a forfeiture action for noncompliance with . . . internal timing requirements . . ..

*Good*, 126 L. Ed. 2d at 510.

■ The State's reliance on *Good* is inapposite. Unlike *Good*, the 90-day requirement is not merely an "internal timing requirement". Here, as discussed above, the time limitation requirement was read into the statute in order to preserve its constitutionality. Because a prompt postdeprivation hearing was an integral component of the Pearsons' due process rights under the Fifth and Fourteenth Amendments, and the Pearsons were denied this right, dismissal of the action was appropriate. The decision of the trial court is therefore affirmed.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, and SMITH, JJ., concur.

MADSEN, J. (dissenting in part) — I must respectfully disagree with the majority in this case as to the appropriate remedy for the State's failure to renote this matter for trial following its successful appeal in *Tellevik v. 31641 W. Rutherford St.*, 120 Wn.2d 68, 93, 838 P.2d 111, 845 P.2d 1325 (1992) (Johnson, J., dissenting). The harsh remedy imposed by the majority is neither mandated by the applicable statute nor by our decision in *Tellevik*. Worse, it is unfair.

The question presented in this case is whether the State complied with the due process requirement in *Tellevik* that an opportunity for a full adversarial hearing be provided within 90 days of the seizure of real property. The clear answer is yes. In *Tellevik* this court stated that:

> The effect of a seizure is to commence the forfeiture proceeding. RCW 69.50.505(c). Once the property has been seized, the seizing agency may take further action to remove the occupants or enter into an occupancy agreement only upon further order of the court following notice and an opportunity for the property owners to be heard. Claimants are entitled to a full adversarial hearing within 90 days if they contest the seizure. RCW 69.50.505(e). At the hearing, the burden is upon the seizing agency to prove the real property is subject to seizure. RCW 69.50.505(e).

*Tellevik*, at 86.

Looking at the case before us, Tellevik v. Real Property Known as 31641 W. Rutherford St., the State filed a complaint for forfeiture in rem and a lis pendens on April 13, 1990. At an ex parte hearing held that day, the trial court signed a warrant of arrest in rem. The summons, complaint for forfeiture in rem, lis pendens, notice of seizure and intended forfeiture, the warrant of arrest in rem and supporting affidavit were served on the Defendants on April 13, 1990, as well. The Defendants appeared in superior court and moved to dismiss the complaint, arguing that the authority, therefore, RCW 69.50.505(b), was unconstitutional. Defendant Pearson also moved for summary judgment under the innocent owner provision of the statute. The State moved to continue the summary judgment motion pursuant to CR 56(f). On September 5, 1990, the trial court denied the State's continuance, granted Defendants' motion for summary judgment, quashed the warrant for arrest in rem, canceled the lis pendens, and found RCW 69.50.505(b) was unconstitutional on its face and as applied. The State appealed.

This court accepted direct review and held that RCW 69.50.505(b) was not unconstitutional on its face nor as applied. It is implicit in this conclusion that RCW 69.50.505(b) was constitutional as applied precisely because the Defendants had received a full opportunity to contest the forfeiture action in King County Superior Court. This court reversed the trial court, including the grant of summary judgment and denial of the State's CR 56(f) motion and stated: "Plaintiffs in Tellevik v. 31641 West Rutherford Street should be allowed to complete discovery in their case against Janet Pearson. As to the remaining Defendants, both cases are remanded for trial on the forfeitures." *Tellevik*, at 92.

The Defendants argue here, and the majority agrees, that the 90-day period ordered by *Tellevik* applies to the renoting of their cases for trial and that the State's failure to comply with this time limitation requires the dismissal of their cases. I disagree. Due process requires only an opportunity to be heard and to contest the seizure. *Tellevik*, at 86-87. The

Defendants clearly have had that and more. Through the course of this matter the Defendants have even had the opportunity for Supreme Court review. The effect of the mandate in *Tellevik* was simply to put the parties back in their respective positions before the trial court entered its erroneous dismissal order on September 5, 1990. Given the procedural history in this case, I would hold that due process has been afforded to these Defendants. As with other substantive time limits, such as a statute of limitations, once the time requirement has been complied with, it need not be complied with again. For example, remand following reversal of a jury verdict in a civil case does not subject the case to the statute of limitations again. Rather, the civil rules of procedure dictate the course of the action on remand.

Since due process was satisfied any further time requirements are not of constitutional magnitude but are merely procedural. The State argues that time requirements which are merely procedural do not require dismissal for noncompliance. I agree with the State. As the United States Supreme Court held recently in *United States v. James Daniel Good Real Property*, 510 U.S. 43, 126 L. Ed. 2d 490, 114 S. Ct. 492 (1993), if a statute does not specify a consequence for noncompliance with an internal timing provision, the court should not fashion its own coercive sanction. *Good*, 114 S. Ct. at 506. RCW 69.50.505 specifies neither a time limit for trial following remand nor a consequence if trial is set beyond 90 days from the issuance of a mandate. Nor does *Tellevik* provide a time requirement for trial following remand. If dismissal was improper in *Good*, where the statute contained a timing provision, it is clearly improper in this case where the statute and the case law are silent as to time requirements for trial following appeal. As the court concluded in *Good*, dismissal is not the proper remedy.

In support of dismissal, the Defendants attempt to analogize the forfeiture scheme of RCW 69.50 to the speedy trial requirement of CrR 3.3. They cite *Seattle v. Hilton*, 62 Wn. App. 487, 815 P.2d 808 (1991), *review denied*, 122 Wn.2d 1012 (1993) as authority for their argument that the man-

date in *Tellevik* retriggers the running of the 90-day hearing requirement. In *Hilton*, this court was asked to construe the provisions of CrRLJ 3.3 which set out the time requirements for trial in criminal cases following appeal or stay. The court found that the time requirements of the rule were commenced by the filing of the mandate. As the State correctly points out, however, there is no corresponding rule which dictates time limits for commencement of trial following appeal in a drug forfeiture case. Nor, as pointed out earlier, does *Tellevik* address whether the 90-day requirement begins anew following appeal. Defendants' reliance on CrR 3.3 is thus unpersuasive.

Moreover, if Defendants are correct that the filing of a mandate following appeal triggers the same preappeal requirements, such as the right to a hearing within 90 days as determined by *Tellevik*, then it follows that the Defendants should also be required to recomply with RCW 69.50.505(e) by filing another written notice contesting seizure after the mandate. *See Tellevik*, at 86. That statute, as well as *Tellevik*, requires that a reasonable opportunity to be heard be afforded to the property owner only if that person notifies the seizing law enforcement agency in writing of the person's claim of ownership or right to possession of the property within 90 days. RCW 69.50.505(e); *Tellevik*, at 87. The failure of the owner to notify the seizing agency of a claim to the property will result in automatic forfeiture after 90 days. RCW 69.50.505(e).

Here, the Defendants filed no written notice contesting the seizure of their property following the mandate in *Tellevik*. The only written notice by the Defendants in this case was filed on June 12, 1990. If the State has not met its burden, the Defendants, likewise, have not met theirs.

Finally, the State correctly argues that the Defendants themselves caused the delay in resetting the case. An affidavit filed by counsel for the State recites a conversation between the State and the Defendants' attorney about selecting the trial date. The State had contacted the defense to set a court date within 90 days following the mandate. In that discussion, the Defendants' counsel stated his prefer-

ence that the matter be. put off pending a decision to seek review by the United States Supreme Court. It is well settled that the right to due process may be waived. *In re Adoption of Jackson*, 89 Wn.2d 945, 952, 578 P.2d 33 (1978); *State v. Myers*, 86 Wn.2d 419, 426, 545 P.2d 538 (1976). Although the State would have been wise to formalize the agreement for delay in a case such as this, in which both parties are struggling with application of new law, this court should find that the verbal request for delay by defense counsel was sufficient to waive the 90-day requirement; that the State relied, to its detriment, on defense counsel's position; and that the Defendants are estopped from complaining of the delay.

It must be borne in mind that we are not dealing with fundamental rights such as the right to speedy trial under CrR 3.3 nor the right to a jury of 12 in a criminal case. Under consideration today is the renoting of a matter in which the trial court's erroneous grant of summary judgment and dismissal resulted in reversal and remand. Given this circumstance, this court's dismissal for failure to comply with the 90-day requirement set forth in RCW 69.50.505(e) is both an inappropriate and an unfair result.

DURHAM and GUY, JJ., concur with MADSEN, J.