[No. 38131-8-I.   Division One.   September 8, 1997.]
DAGOBERTO ESPINOZA, ET AL., *Respondents*, v. THE CITY OF EVERETT, ET AL., *Appellants*.

---

[11]In light of our disposition, we reject Scott's argument that it is entitled to a buyer/broker fee.

858

860

*Mark T. Patterson;* and *Catherine Wright Smith* and *Edwards, Sieh, Hathaway, Smith & Goodfriend, P.S.,* for appellants.

*Richard B. Daniel;* and *Richard J. Troberman,* for respondents.

ELLINGTON, J — During a drug investigation, City of Everett police searched Manuel Arechiga's car, in which they discovered $260,000 in cash. The City attempted to forfeit both car and cash. When the government seeks to forfeit property as drug proceeds, the government must observe certain modest due process requirements. The City of Everett failed to do so, and the trial court dismissed the forfeiture proceedings and ordered the property returned to the plaintiffs, who (when finally afforded an opportunity after almost five years) presented unrebutted evidence of ownership. We hold that a letter claiming ownership of property and contesting its forfeiture need not provide detailed identification of claimants nor actual proof of their ownership, and that a hearing within 90 days is required. We affirm dismissal of the forfeiture and restoration of the property to plaintiffs.

## Facts

On January 9, 1991, City of Everett police searched two hotel rooms registered to suspected drug traffickers. One of the rooms was registered to Mary Ellen Ortega, who had listed a Volkswagen Jetta as affiliated with her room. Angel Lopez was staying in the room with Ortega. The police found no cocaine in the room, but in Lopez's wallet, they found a receipt for a storage locker. Lopez told the police that the Jetta was stored in this locker but that he did not know to whom the car belonged or what was in it. The police obtained a warrant to search the car, which was registered to Manuel Arechiga. In the trunk, they discovered "flecks of white powder" that tested positive for cocaine, but in amounts "much less than 0.1 gram." In a door panel, the police found $260,000 in cash. The car and the cash were impounded. No charges were filed against either Ortega or Arechiga; charges filed against Lopez were dismissed.

The day after the seizure, the City notified Lopez and Ortega of its intent to forfeit the car and the $260,000, thus providing them with 44 days to file a claim contest-

ing the forfeiture. *See* RCW 69.50.505 (c), (d). Neither filed any claim.

Six days after the seizure, the City notified Arechiga of its intent to forfeit the car. The notice sent to Arechiga made no mention of the money. Some 30 days later, Arechiga's attorney notified the City of Arechiga's claim of ownership and right to possession of the car. In the same letter, the attorney informed the City that he represented a group of individuals who were lawful owners of "a large sum of cash money that was also seized by your department on January 9, 1991." The letter did not explicitly identify the individual members of the group claiming the cash. The attorney requested a hearing as to both car and cash.[1]

The City did not respond for nearly one month, by which time the statutory deadline for demanding a hearing had elapsed. RCW 69.50.505(c), (d). The City then agreed to set a hearing for the car, but refused any hearing on forfeiture of the cash, contending that "a claim by 25 unidentified persons who provide no basis in fact for the claim is not a sufficient notice of claim." The City cited no authority to support its view that the claim was insufficient.[2] Because of the City's delay in responding, plaintiffs lost

---

[1]In full, the attorney's letter states:

Our office represents Manuel Leon Arechiga owner of a 1990 volkswagen [sic] Jetta vehicle ID number WVWMA21G8LW121771 seized by your department on January 9, 1991. Mr. Arechiga is claiming his right to possession of this vehicle as its rightful and lawful owner.

In addition there to [sic] we represent a group of approximately twenty five people who are the owners of a large sum of cash money that was also seized by your department on January 9, 1991. These individuals are the lawful legal owners of this money and have retained us to assist them in obtaining their legal right to possession of the seized property.

We hereby request a hearing regarding the seized property owned by our clients and referred to above.

Thank you for your cooperation in this matter and please advise us as soon as possible as to your intentions with regard to releasing our clients['] property to them.

[2]In full, the City's letter recites:

I am the attorney for the City of Everett in contested forfeiture actions. I have reviewed your letter of February 12, 1991, to the Chief of Police[,] which

any opportunity to cure this alleged deficiency within the statutory deadline. *See* RCW 69.50.505(c), (d). Plaintiffs' counsel requested the City to reconsider, listed 27 individuals (including Arechiga) who claimed ownership of the money, and informed the City that these individuals intended to use the money to purchase buses, as they had done in the past. The City declined to reconsider, and set no hearing of any kind for either the car or the cash.

On June 24, 1991, approximately five months after the seizure, plaintiffs removed the forfeiture action to superior court as permitted by the forfeiture statute. *See* RCW 69.50.505(e). In the year following removal, the City served a number of interrogatories. To obtain answers, plaintiffs' counsel traveled to Mexico and deposed the plaintiffs. The City was invited to attend, but declined. The record contains excerpts from the depositions of 14 plaintiffs, each of whom testified to giving a sum of U.S. currency to Arechiga so he could purchase equipment such as buses and tractors in the United States, equipment not readily available in Mexico. They desired buses because the Mexican government allows private enterprises to provide mass transit services on a permit basis. Tractors and other equipment were desired for general farm work. They used currency because individuals cannot maintain bank accounts in U.S. dollars within the borders of Mexico, and maintaining bank accounts in pesos is fiscally imprudent because of constant devaluation. Several deponents testified they had previously purchased equipment in this manner.

Four months after the depositions were taken, the City unilaterally, and without advising the trial court, trans-

---

was received in our office on February 15, 1991. Based on that letter we will set a hearing for your client Manuel Leon Arechiga concerning the Volkswagen Jetta, ID No. WVWMA21G8LW121771.

With regard to the cash, it is our view that a claim by 25 unidentified persons who provide no basis in fact for the claim is not a sufficient notice of claim, and I will recommend that no hearing be set on the basis of this letter.

ferred the currency to the U. S. Customs Service. The money languished in the federal system for a year and a half before plaintiffs persuaded Customs that the transfer was invalid because the state court had previously asserted jurisdiction over the res. Once so persuaded, Customs returned the currency to superior court, where litigation resumed.

Eventually, in August 1995, the court dismissed the forfeiture action, finding that a delay of four and half years between the seizure and a full adversarial hearing violated due process guarantees of the state and federal constitutions. The court also found this delay affronted the forfeiture statute, which provides for a reasonable opportunity to be heard. Rejecting the City's contention that its position was justified because counsel had not initially identified the individuals claiming ownership of the money, the court noted that the forfeiture statutes require no such identification.

On summary judgment, the court ordered the City to deliver the property to plaintiffs because the money had been found in Arechiga's car, no one else had claimed the money, Arechiga testified he was holding the money on behalf of other plaintiffs who in turn testified they gave the money to Arechiga, and the State provided no evidence that the money belonged to anyone but plaintiffs. The City's argument that a jury should determine whether the money was actually drug money was rejected by the court as irrelevant because the City's delay rendered the forfeiture statute inapplicable: "It does not matter whether the money was Plaintiffs' drug money or Plaintiffs' equipment money, so long as it was Plaintiffs' money."

Plaintiffs asked the court to order postjudgment interest at the maximum lawful rate pursuant to RCW 4.56.110, and for statutory costs under RCW 4.84.030. The court cited *Smith v. Mount*, 45 Wn. App. 623, 726 P.2d 474, *review denied*, 107 Wn.2d 1016 (1986) for the proposition that the forfeiture statute did not allow the recovery of costs. The

court also refused to award statutory postjudgment interest, reasoning that ordering the return of the cash was an equitable remedy and that a money judgment and related statutory interest were therefore unwarranted. The court did, however, award plaintiffs any interest that the City had actually earned on the cash.

## Discussion

■ The City argues that the court erred in dismissing the forfeiture proceeding and in ordering the return of the property on summary judgment. Plaintiffs argue that the court erred in denying statutory postjudgment interest and costs. These issues all involve the application of law to undisputed facts and are therefore reviewed de novo. *See Friends of the Law v. King County*, 123 Wn.2d 518, 523, 869 P.2d 1056 (1994).

## Due Process

■ The first question is whether the court properly dismissed the forfeiture action because the City had violated statutory and constitutional due process guarantees. The power to order forfeiture derives solely from statute. The forfeiture statute of the Uniform Controlled Substances Act obligates the City to serve notice of an intent to forfeit upon any individual having a known right or interest in the property sought to be forfeited. Individuals specifically required to be notified within 15 days of seizure include the owner and the person "in charge" of the property. RCW 69.50.505(c). A party contesting the forfeiture of personal property has 45 days from the date of the seizure to file a claim of ownership or right to possession, after which the claimant is entitled to "a reasonable opportunity to be heard." RCW 69.50.505(e); *see also State v. Alaway*, 64 Wn. App. 796, 799-801, 828 P.2d 591, *review denied*, 119 Wn.2d 1016, 833 P.2d 1390 (1992). In a case involving attempted forfeiture of real property, our Supreme Court held that due process entitles such claimants to a full adversarial hearing within 90 days of seizure.

*Tellevik v. 31641 W. Rutherford St.*, 125 Wn.2d 364, 367, 370-372, 884 P.2d 1319 (1994) (*Tellevik II*); *Tellevik v. 31641 W. Rutherford St.*, 120 Wn.2d 68, 86, 838 P.2d 111, 845 P.2d 1325 (1993) (*Tellevik I*).

■ Here, the City seized a quarter of a million dollars from a car registered to Arechiga. The only other people with any connection to the car, Lopez and Ortega, claimed no ownership. Lopez, who was in possession of the storage locker receipt, informed the police that he had no ownership interest in either the car or the cash. Ortega made no claim. The only known possible owner of the car, therefore, was its registered owner, Arechiga, and the person likely to be "in charge" of its contents was also Arechiga. " 'The seizure of property from someone is prima facie evidence of that person's entitlement.' " *State v. Marks*, 114 Wn.2d 724, 734, 790 P.2d 138 (1990) (quoting *United States v. Wright*, 610 F.2d 930, 939 (D.C. Cir. 1979)) (emphasis omitted). The facts here plainly constitute prima facie evidence that Arechiga had an ownership interest in the car, and had at least a possessory interest in the cash. Thus, the forfeiture statute obliged the City to serve Arechiga notice of the seizure and the intended forfeiture of both the car and the cash. *See* RCW 69.50.505(c).

For reasons the City has never explained, it provided Arechiga with notice as to the car only. This is arguably fatal to the City's attempt to proceed with forfeiture of the cash, because when statutory procedures are not followed, the government is estopped from proceeding in a forfeiture action. *See Alaway*, 64 Wn. App. at 799-802. We do not decide the case on this ground, however, because the plaintiffs have not urged us to do so, and because, as his attorney's letter demonstrates, Arechiga was effectively apprised of the cash seizure when notified of the car seizure.

Even assuming proper notice was provided here, the City's subsequent actions divested the City of any authority to forfeit either car or currency. Plaintiffs timely requested a hearing for both the car and the cash. The

City concedes that the hearing demand for the car was proper. Nevertheless, the City never set a hearing for the car. The City asserts the alleged defect in the demand was fatal to plaintiff's right to a hearing as to the cash. This argument is not supported by either the statute or our cases.

■ The forfeiture statute provides that "[i]f any person notifies the seizing law enforcement agency in writing of the person's claim of ownership . . . . [that] person shall be afforded a reasonable opportunity to be heard as to the claim." RCW 69.50.505(e). The Uniform Controlled Substances Act defines "person" as including corporations, associations, partnerships, and joint ventures.[3] RCW 69.50.101(u). As the trial court noted, the law recognizes de facto joint ventures even if they have no formal name. *See, e.g., Malnar v. Carlson*, 128 Wn.2d 521, 534-36, 910 P.2d 455 (1996). The trial court correctly concluded that the statutory scheme does not require constituent members of such a joint venture to be explicitly named. Indeed, explicitly naming such members would provide no information of immediate value to the City. The only identifying information necessary at this stage is contact information so that the City can schedule further proceedings. Here, such communication could have been made through counsel. Finally, had the City served notice as to the cash, at least one claimant (Arechiga) would very likely have been identified with specificity.

■ Although never clearly explained, the crux of the City's argument is apparently that the legitimacy of plaintiffs' claim could not be discerned by inspecting the demand letter. But the statute places no such burden on the demand letter. The legitimacy of the claim is to be resolved by a trier of fact after a full adversarial hearing. It is not to be unilaterally resolved by the party seeking to effectuate forfeiture.

---

[3]The definition of "person" is: " 'Person' means individual, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial agency." RCW 69.50.101(u).

■ The City cites *United States v. $38,570 U.S. Currency*, 950 F.2d 1108 (5th Cir. 1992) for the proposition that "[a] claimant's 'bare assertion' of ownership of currency is insufficient to establish standing to object to forfeiture." That case, however, involved the interpretation of a federal forfeiture rule and thus is only persuasive authority at best. More to the point, its reasoning has been soundly criticized as imposing an unreasonable burden, in the limited time available to file a claim, and as creating a trap for unwary claimants:

> In [*$38,570*], the Fifth Circuit apparently took the position that, ordinarily, "a claimant is required to submit some additional evidence of ownership *along with [the] claim* in order to establish standing to contest the forfeiture." This is incorrect. There is no justification or authority for requiring a claimant to submit proof of his standing along with his claim. Rule C(6) does not require such evidence and the very short time limit for filing a claim would create problems in some cases if a claimant had to submit proof of his standing along with his ownership claim. It would also be a trap since the language of the rule does not require a claimant to support his claim of ownership with proof.

1 DAVID B. SMITH, PROSECUTION AND DEFENSE OF FORFEITURE CASES ¶ 9.04 at 9-68.7 (1996) (footnote omitted). We agree with this criticism. As the facts here demonstrate, these concerns are well-founded. Plaintiffs resided in a remote locale and had only 39 days from the time Arechiga was notified in which to locate an attorney and contest the forfeiture. Just as the forfeiture statute does not require the explicit naming of all individuals, neither does it require a recitation of background facts establishing the claimants' interest in the property. Nor did the City's notice indicate that such information was necessary. Rather, Arechiga was instructed only to "notify the City . . . in writing of [his] claim of ownership or right to possession." Under these circumstances, imposing such naming and recitation requirements would indeed constitute a trap for the unwary.

■ The city next attempts to avoid the 90-day hearing requirement of *Tellevik*, arguing that *Tellevik* should be limited to its facts, and that application of the 90-day hearing required by the *Tellevik* holdings "is particularly unwarranted given that both *Tellevik* I and *Tellevik* II were decided after this action was commenced." But the *Tellevik* court imposed the 90-day time limitation to preserve the constitutionality of the statute. *See Tellevik* II, 125 Wn.2d at 370-71. In any event, a fundamental rule of statutory construction is that once a statute has been construed by the highest court of the state, that construction operates as if it were originally written into the statute. *See, e.g., In re Vandervlugt*, 120 Wn.2d 427, 436, 842 P.2d 950 (1992).

Nor does the fact that *Tellevik* involved the seizure of real property suggest, as the City contends, that a rule more lenient to the government should be fashioned for forfeiture of personal property. Nothing in the *Tellevik* opinions suggests that the 90-day rule should be limited to real property. Rather, the court modified *Tellevik* I to remove a reference to real property and to add a citation to the Administrative Procedures Act, which does not apply to real property. *Tellevik* I, 120 Wn.2d 68, 87, 838 P.2d 111, 845 P.2d 1325 (1993). Indeed, an argument can be made for a rule more protective of personal property interests, rather than less, because claimants retain physical control of seized real property, see *Tellevik* II, 125 Wn.2d at 371-72, whereas seized personal property comes under the complete and immediate control of the government. As the facts here demonstrate, such complete control will not always be wise stewardship.

Even ignoring the 90-day requirement of *Tellevik*, the City does not explain how passage of four and a half years could conform to due process and constitute "a reasonable opportunity to be heard." We hold that the 90-day hearing requirement of *Tellevik* applies to forfeiture of any property, real or personal.

The City's other arguments are also without merit. For

example, the City next contends that it should be excused from adhering to the time limit because plaintiffs "participated in the federal forfeiture proceedings, during which the City had no control over the seized property." This argument ignores the fact that the City deliberately relinquished its "control over the seized property" and created the need for the federal forfeiture proceedings when it unilaterally transferred the cash to Customs without authorization from the state trial court, an action for which the City has provided no justification whatsoever. The fault for any delay associated with the federal action lies entirely with the City.

In a similar vein, the City argues that its delay should be excused because plaintiffs complicated matters by asserting an "unwarranted Section 1983 claim." The merits of this claim are irrelevant, as its assertion does not vest the City with "the power to ignore the statutory limitations on a hearing date." *Tellevik* II, 125 Wn.2d at 373. In any event, the delay associated with this claim is inconsequential because the claim was dismissed in September, 1994, after which another year passed without the City setting any hearing.

The City further argues that the notice is defective because plaintiffs' claim failed to identify the res with specificity. The City did not make this argument until its reply brief and thus we will not consider it here. *See* RAP 2.5(a); RAP 10.3(c). We note, however, that there was never any dispute as to the identity of the cash, and if plaintiffs' counsel could perhaps have identified the amount with greater specificity, his failure to do so is in part explained by the fact that the City, contrary to the forfeiture statute, did not notify Arechiga of its intent to forfeit the cash found in his car. *See* RCW 69.50.505(c).

Lastly, the City argues that plaintiffs caused the delay by failing to provide timely discovery, noting that in February 1995, it moved to compel answers to interrogatories served in November 1994. The City forgets that the seizure occurred in January, 1991. Any delay in responding to

discovery occurred more than three years after the seizure and is of no moment here. We also note that several of these interrogatories had been answered in the depositions taken two years earlier.

In short, the equities in no way favor the City. Relying entirely upon a technical argument about the adequacy of plaintiffs' demand letter, the City denied all requests for hearings. Yet the City seeks to be relieved of procedural requirements premised on constitutional principles and statute. The City seeks stringent rules for claimants, and lenient rules for government. This equation is hardly in balance.

### Right to Possession After Dismissal of Forfeiture

██ ██ The next question is whether the court correctly held on summary judgment that the City had no right to retain the property once the forfeiture action had been dismissed. Summary judgment is proper only if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). " '[A] court may refuse to return seized property no longer needed for evidence only if (1) the defendant is not the rightful owner; (2) the property is contraband; or (3) the property is subject to forfeiture pursuant to statute.' " *Barlindal v. City of Bonney Lake*, 84 Wn. App. 135, 139, 925 P.2d 1289 (1996) (quoting *State v. Alaway*, 64 Wn. App. 796, 798, 828 P.2d 591, *review denied*, 119 Wn.2d 1016, 833 P.2d 1390 (1992)). " 'The seizure of property from someone is prima facie evidence of that person's entitlement[,]' " *State v. Marks*, 114 Wn.2d 724, 734, 790 P.2d 138 (1990) (emphasis omitted) (quoting *United States v. Wright*, 610 F.2d 930, 939 (D.C. Cir. 1979)), and the burden is on the City to prove a greater right of possession than that of the plaintiffs. *State v. Card*, 48 Wn. App. 781, 790-91, 741 P.2d 65 (1987).

Here, the City made no showing of a right to possession. The property was not contraband, was not subject to forfeiture, was not alleged to have been stolen or needed for

evidence. Plaintiffs provided prima facie evidence of their right to possession. While there may also have been indications that the money was the fruit of illegal activity, this is irrelevant, because the City's lack of diligence divested the City of the opportunity to seek forfeiture: "[T]he [government] cannot confiscate property merely because it is derivative contraband, but instead must forfeit it using proper forfeiture procedures." *Alaway*, 64 Wn. App. at 799. Having failed to use proper forfeiture procedures, the City acquired the burden of demonstrating some other right to possession, a burden it failed to meet in any way. The court correctly ordered the money returned to plaintiffs.

## *PostJudgment Interest*

■■ The trial court refused to award statutory postjudgment interest. A city is immune from interest on judgments unless express contract terms or a reasonable construction of a statute dictate otherwise. *Campbell v. Saunders*, 86 Wn.2d 572, 577-78, 546 P.2d 922 (1976). Although this issue was discussed in the trial court proceedings, the plaintiffs waited until their reply brief to make any argument as to how the City's immunity could be overcome. Only then did plaintiffs maintain they were entitled to statutory interest because the City committed the tort of conversion.[4] Plaintiffs provide no citation to the record that this conversion theory was argued below; nor have we found any such indication. Out of fairness to the trial court and the opposing party, theories advanced for

---

[4]By statute, a city is liable for postjudgment interest if that judgment is based on tortious conduct. *See, e.g., Teevin v. Wyatt*, 75 Wn. App. 110, 114-15, 876 P.2d 944 (1994); RCW 4.56.115. The tort of conversion occurs when one intentionally and unlawfully deprives an owner of possession of a chattel. *See, e.g., Frisch v. Victor Indus., Inc.*, 51 Wn. App. 377, 381, 753 P.2d 1000 (1988). Plaintiffs' theory here is that while the City had a lawful justification for seizing the property, that justification ceased to exist when the City refused to schedule a hearing within 90 days of the seizure. *See Tellevik II*, 125 Wn.2d at 370-71. From that point forward, the plaintiffs argue that the City intentionally interfered with their property and therefore committed conversion. *Accord Johnson v. Johnson*, 849 P.2d 1361, 1365 (Alaska 1993). We note that *Tellevik* was decided well after the seizure here.

the first time on appeal generally will not be considered. *See* RAP 2.5(a). We thus decline to consider the conversion theory on the merits, and affirm the denial of statutory postjudgment interest. Because the City has not argued otherwise, however, plaintiffs are, as the trial court ruled, entitled to any interest that the City actually earned on the money. *Accord United States v. $277,000 U.S. Currency*, 69 F.3d 1491, 1492 (9th Cir. 1995).[5]

## Costs

■ The trial court also refused to award statutory costs to plaintiffs under *Smith v. Mount*, 45 Wn. App. 623, 726 P.2d 474, *review denied*, 107 Wn.2d 1016 (1986). The issue in the *Smith* case was whether the government could collect fees under the forfeiture statute, which authorizes fees to a prevailing claimant in a hearing involving two or more claimants. *See* RCW 69.50.505(e). The court held fees were not available because the government was not a claimant. *Smith*, 45 Wn. App. at 630-31. The *Smith* court in no way implied that a prevailing party is precluded from recovering costs under RCW 4.84.030, nor is any such implication warranted. We therefore reverse the denial of costs.

Affirmed, and remanded for an award of statutory costs.

COLEMAN and WEBSTER, JJ., concur.

Review denied at 134 Wn.2d 1016 (1998).

---

[5]The City's request for fees in responding to this portion of the cross-appeal is denied.