Faye and Edward **GARNEAU**, Robert **Klepinger**, **Nicolas Fedan**, **Richard Ju** and **Triad Development, Inc.,** a Washington corporation, **Plaintiffs,**

v.

**CITY OF SEATTLE,** a municipal corporation, **Defendant,**

and

**The Tenants Union,** a Washington nonprofit corporation, on behalf of itself and other persons similarly situated, **Defendant–Intervenor.**

No. C94–914R.

United States District Court, W.D. Washington.

Aug. 18, 1995.

---

Eric Hultman, Dann, Radder, Williamson
& Meacham, Seattle, WA, for plaintiffs.

Judith Barbour, Sandra Watson, Seattle City Attorney's Office, Seattle, WA, for defendants.

Steve Fredrickson, David Girard, Evergreen Legal Services, Seattle, WA, for intervenors.

## AMENDED ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

ROTHSTEIN, District Judge.

THIS MATTER comes before the court on cross-motions for summary judgment.[1] Having reviewed the documents filed in support and in opposition to the motions, and being fully advised, this court finds and rules as follows:

## I. BACKGROUND

Plaintiffs[2] brought suit against the City of Seattle challenging SMC 22.210.010 et seq. (Ord. No. 115141), the Tenant Relocation Assistance Ordinance (the "TRAO") and RCW 59.18.440. Defendant, the City of Seattle ("the City") has moved for summary judgment, requesting that the court determine the facial constitutionality of RCW 59.18.440 and the TRAO. The Tenants Union, a Washington non-profit corporation, as a defendant-intervenor in this matter, has joined in the City's motion for summary judgment. Plaintiffs have cross-moved for summary judgment, requesting that the court declare the TRAO unconstitutional.

Pursuant to Fed.R.Civ.P. 23(a) and 23(b)(2), the court previously certified plaintiff and defendant classes in this matter. 10/7/94 Order. The plaintiff class is defined as follows:

> For purposes of determining the facial constitutionality of RCW 59.18.440, all past, present and future owners of residential property in jurisdictions that are required to develop a comprehensive plan under RCW 36.70A.040(1) and who are, have been, or may in the future be subject to an ordinance adopted pursuant to RCW 59.18.440 requiring such owners to provide reasonable relocation assistance to low-income tenants.

> For purposes of determining the constitutionality of the Tenant Relocation Assistance Ordinance, Ordinance 115141, or any successor thereto, all past, present and future owners of residential property who have in the past or may in the future be required to provide cash relocation assistance to low-income tenants under the terms of the Tenant Relocation Assistance Ordinance, Ordinance 115141, or any successor thereto.

10/7/94 Order, at 3.

The court has defined the defendant class as follows:

> For the purpose of determining the constitutionality of RCW 59.18.440 and Seattle's Tenant Relocation Ordinance, a class consisting of all low-income tenants who have in the past or may in the future be displaced by demolition, substantial rehabilitation, change of use, or removal of use restrictions of their dwelling unit and who have in the past or may in the future be declared eligible for an owner payment of cash relocation assistance under the Tenant Relocation Assistance Ordinance, Ordinance No. 115141, or any successor thereto.

*Id.* This order shall apply to the plaintiff and defendant classes as certified in this court's October 7, 1994 order.

### A. RCW 59.18.440

In 1990, the Washington State Legislature adopted RCW 59.18.440 as part of the Growth Management Act. RCW 59.18.440 authorizes certain local jurisdictions:

---

1. This order supersedes and replaces the court's August 11, 1995 order granting defendants' motion for summary judgment and denying plaintiffs' motion for summary judgment.

2. The named plaintiffs are Faye and Edward Garneau, Robert Klepinger, Nicolas Fedan, Richard Ju, and Triad Development, Inc., a Washington corporation. In their complaint, each of the named plaintiffs allege they have paid relocation fees pursuant to the ordinance challenged in this matter.

to require, after reasonable notice to the public and a public hearing, property owners to provide their portion of reasonable relocation assistance to low-income tenants upon the demolition, substantial rehabilitation whether due to code enforcement or any other reason, or change of use of residential property, or upon the removal of use restrictions in an assisted-housing development. . . .

RCW 59.18.440(1).

In enacting RCW 59.18.440, the state legislature identified the need to encourage economic opportunity for all Washington citizens and to promote the availability of affordable housing as well as to preserve existing housing stock. Washington Laws, 1990, 1st Ex. Sess., Ch. 17, § 2(4) and (5). Plaintiffs do not dispute that these are legitimate government purposes.

### B. The City of Seattle's Tenant Relocation Assistance Ordinance

SMC 22.210.010 *et seq.*, the TRAO, requires landlords to pay cash relocation assistance to low-income [3] tenants they intend to displace by redeveloping their property. Specifically, the TRAO provides that:

> Low-income tenants who are displaced by demolition, change of use, substantial rehabilitation, or removal of use restrictions and who comply with the requirements of [the TRAO], shall be paid a relocation assistance payment in the amount of two thousand dollars ($2000.00). . . .

SMC 22.210.130(A).

Under the TRAO, the owner of the dwelling unit:

> is responsible for payment of one-half (½) of the total amount of relocation assistance due to eligible tenants pursuant to [the TRAO]. The City is responsible for pay-

ment of the remaining one-half (½) of the relocation assistance.

SMC 22.210.110(A).

Within five days of receiving notice of tenant eligibility, the owner of a dwelling must provide the Director of the Department of Construction and Land Use with the owner's portion of the relocation assistance to be paid to eligible tenants. SMC 22.210.110(B). After eligible tenants are paid the relocation assistance, any money remaining of the owner's deposit is returned "thirty (30) days after final unappealed decisions regarding eligibility of all tenants of the affected units, . . ." SMC 22.210.130(F).

### C. Public Hearings Prior to Enactment of the TRAO

Pursuant to RCW 59.18.440(1), the Seattle City Council held a public hearing on June 7, 1990 concerning the Tenant Relocation Assistance Ordinance (the "TRAO"). Approximately 30 citizens testified in favor of the ordinance. No one testified against the proposed ordinance. The TRAO was also discussed at two other open, public meetings: the May 22, 1990 meeting of the Housing and Human Services Committee and the full Seattle City Council meeting on June 12, 1990.

On July 2, 1990 the City enacted the TRAO. The parties have stipulated that the "TRAO conforms to the requirements of RCW 59.18.440." [4] Stip. of Fact 2.

The parties have stipulated to the following concerning testimony given at the June 7, 1990 public hearing:

> One of the purposes of the hearing was to receive testimony regarding the relocation expenses that displaced tenants might reasonably incur. At the June 7, 1990 public hearing, Karen White, an employee of the Department of Construction and Land Use ("DCLU"), the agency designated to administer the TRAO, testified regarding the results of an informal study she had conducted regarding the average

---

3. "Low income" is defined by the TRAO as follows: " 'Low income' means total combined income per dwelling unit is at or below fifty percent (50%) of the median income, adjusted for family size, in King County, Washington." SMC 22.210.030(G).

4. The parties have stipulated to numerous facts. In this order, citation to the parties' stipulation will be as follows: "Stip. of Fact" followed by the corresponding number given the stipulated fact by the parties.

costs of relocating for displaced tenants, using the cost categories provided in RCW 59.18.440. Ms. White called 3 or 4 local moving companies to determine the average cost of moving a household from a 1-bedroom apartment to some other location in Seattle. She referred to a monthly report published by a local realty company, Cain and Scott, to learn the average rent in Seattle, to use in determining first and last months' rent costs. She also contacted a local real estate analyst who had recently completed a study of the typical amount required for damage and security deposits by local landlords. She also contacted the local utility companies to determine typical connection fees and deposits. . . .

Stip. of Fact 4.

Karen White testified that the various moving costs, on average, totalled $2191.00. Stip. of Fact 4.

### D. The Motions Before the Court

The defendant City of Seattle and defendant-intervenor the Tenant Union seek a declaratory judgment holding that RCW 59.18.440 and the TRAO are facially constitutional.[5] Specifically, they ask the court to declare that neither RCW 59.18.440 nor the TRAO: 1) violate the substantive due process protections of the state and federal constitutions; 2) violate the guarantees of equal protection under the state and federal constitutions; 3) take property in violation of the state or federal constitutions; or 4) violate Article VII, § 1 of the Washington State Constitution which requires property taxes to be uniform and imposed for public purposes.

Plaintiffs have cross-moved for summary judgment, seeking declaratory relief holding the TRAO unconstitutional, facially and as applied to plaintiffs. Plaintiffs also seek a refund of any amounts paid pursuant to the TRAO.

Plaintiffs' claims, including their as-applied challenge to the constitutionality of the TRAO, were dismissed on March 7, 1995 in response to plaintiffs' agreement that such dismissal was the appropriate sanction for plaintiffs' refusal to provide discovery as ordered by the court. See March 7, 1995 Order; February 22, 1995 Letter from Plaintiffs' Counsel. Therefore, defendants' motion to strike any arguments concerning plaintiffs' as-applied challenge is GRANTED.[6] The court will resolve the facial challenge in the context of defendants' motion for summary judgment.

## II. DISCUSSION

### A. Legal Standard

A grant of summary judgment is appropriate if it appears, after viewing the evidence in the light most favorable to the opposing party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assn.*, 809 F.2d 626, 630–631 (9th Cir.1987); *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir.1985). The facts necessary to determine the facial constitutionality of RCW 59.18.440 and the TRAO are undisputed. Therefore, the court finds this matter is appropriate for summary judgment.

### B. Substantive Due Process

■ According to the Ninth Circuit Court of Appeals,

[t]o establish a violation of substantive due process, the [plaintiffs] are required to prove that the [enactment of RCW

---

5. The parties have not briefed the issue of whether the Washington Constitution provides greater protection than does the United States Constitution with respect to the issues presented by this case. Therefore, pursuant to the *"Gunwall"* doctrine, named for *State v. Gunwall*, 106 Wash.2d 54, 61–62, 720 P.2d 808 (1986), the court will not independently analyze the Washington State Constitution's provisions. *See Ford Motor Co. v. Barrett*, 115 Wash.2d 556, 568, 800 P.2d 367 (1990); *Tellevik v. Real Property Known*

*as 31641 West Rutherford Street*, 120 Wash.2d 68, 77, 838 P.2d 111 (1992), *aff'd on other grounds*, 125 Wash.2d 364, 884 P.2d 1319 (1994).

6. The court notes that the parties have stipulated that "[n]one of the plaintiffs has been denied compensation by the Washington State courts under the inverse condemnation procedures in Washington for the property interest allegedly taken by the TRAO." Stip. of Fact 8.

59.18.440 and the TRAO] was "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare."

*Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir.1994) (quoting *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1407 (9th Cir.1989), *cert. denied*, 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990)). "Legislative acts that do not impinge on fundamental rights or employ suspect classifications are presumed valid, and this presumption is overcome only by a 'clear showing of arbitrariness and irrationality.'" *Kawaoka*, 17 F.3d at 1234 (quoting *Hodel v. Indiana*, 452 U.S. 314, 331–32, 101 S.Ct. 2376, 2386–87, 69 L.Ed.2d 40 (1981)). In analyzing a substantive due process challenge, the court does "not require that the City's legislative acts actually advance its stated purposes, but instead look[s] to whether 'the governmental body *could* have had no legitimate reason for its decision.'" *Kawaoka*, 17 F.3d at 1234 (emphasis in original) (quoting *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 690 (9th Cir. 1993), *cert. denied*, — U.S. —, 114 S.Ct. 924, 127 L.Ed.2d 217 (1994)).

According to *Kawaoka*, the City's ordinance:

> does not violate substantive due process as long as it advances any legitimate public purpose, *Construction Indus. Ass'n v. Petaluma*, 522 F.2d 897, 906 (9th Cir.1975), and if it is 'at least fairly debatable' that the decision to adopt [the TRAO] was rationally related to legitimate governmental interests, the City's actions must be upheld. *Christensen v. Yolo County Bd. of Supervisors*, 995 F.2d 161, 165 (9th Cir. 1993).

*Kawaoka*, 17 F.3d at 1234.

The parties in this matter have stipulated that "[o]ne of the purposes of the TRAO, and by extension RCW 59.18.440, is to protect and financially assist residential tenants, especially low-income tenants, who were being displaced by demolition, change of use, or substantial rehabilitation of their rental units," Stip. of Fact 9, and that "[p]rotecting and assisting residential tenants, especially low-income tenants, who are being displaced

by private development is a legitimate public purpose." Stip. of Fact 10. The parties have also stipulated that the "Seattle City Council could have believed that requiring owners ... to pay half of the average cost of relocating, with the City paying the other half, would assist low-income tenants in mitigating the economic hardships they would face as a result of the displacement." Stip. of Fact 13.

Thus, the plaintiffs cannot show that "the governmental body *could* have had no legitimate reason for its decision," *Kawaoka*, 17 F.3d at 1234 (citations omitted), as the stipulation establishes that one of the purposes of the TRAO (and by extension RCW 59.18.440) constitutes "a legitimate public purpose."

Based on the parties' stipulations of fact, "it is 'at least fairly debatable' that the decision to adopt [RCW 59.18.440 and the TRAO] was rationally related to legitimate governmental interests, [and therefore the legislative] actions must be upheld." *Kawaoka*, 17 F.3d at 1234 (quoting *Christensen v. Yolo County Bd. of Supervisors*, 995 F.2d 161, 165 (9th Cir.1993)).

In addition to the parties' stipulation, the court finds that protecting and assisting low-income tenants who are being displaced is a legitimate governmental interest. *See e.g., Levald, Inc. v. City of Palm Desert*, 998 F.2d at 690 ("the stated purposes of the [mobile home rent control] ordinance were to alleviate hardship created by rapidly escalating rents; ... and to protect residents from unconscionable and coercive changes in rental rates ... [T]he Supreme Court has held that these goals are legitimate.") (citing *Pennell v. City of San Jose*, 485 U.S. 1, 13–14, 108 S.Ct. 849, 858–59, 99 L.Ed.2d 1 (1988)); *see also Robinson v. Seattle*, 119 Wash.2d 34, 53, 54, 830 P.2d 318 (1992), *cert. denied*, — U.S. —, 113 S.Ct. 676, 121 L.Ed.2d 598 (1992).

The court finds that the City's decision to adopt the TRAO was rationally related to legitimate governmental interests. Therefore, on its face, the TRAO does not violate substantive due process. Similarly, on its face, RCW 59.18.440 does not violate substantive due process.

## C. Equal Protection

■ " 'Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race ... [courts] presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest.' " *Kawaoka,* 17 F.3d at 1238 (quoting *New Orleans v. Dukes,* 427 U.S. 297, 303–04, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976)).

"[Z]oning and land use issues do not implicate fundamental rights." *Id.* at 1239 (citation omitted). In addition, the parties have stipulated that "[o]wners of residential units containing low-income tenants are not a suspect class as defined by the Washington and Federal courts." [7] Stip. of Fact 20.

Because they do not infringe upon fundamental rights, and do not discriminate against a suspect class, RCW 59.18.440 and the TRAO do not unconstitutionally infringe upon the guarantee of equal protection if the classifications they draw are "rationally related to a legitimate state interest." *Kawaoka,* 17 F.3d at 1238.

As the parties have stipulated and the court found above, protecting and assisting low-income tenants who are being displaced is a legitimate governmental interest. *See* Stip. of Fact 10. Thus, "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the legislature's actions were irrational," *Pennell v. City of San Jose,* 485 U.S. at 14, 108 S.Ct. at 859, the constitutional guarantee of equal protection is not violated.

The classifications made by RCW 59.18.440 and the TRAO differentiate between owners of residential property who choose to redevelop their property and have low-income tenants and other property owners who either choose not to redevelop their property or do not have low-income tenants. As the Supreme Court stated in *Pennell,* "[i]n light of our conclusion above that the Ordinance's tenant hardship provisions are designed to serve the legitimate purpose of protecting tenants, we can hardly conclude that it is irrational for the Ordinance to treat certain landlords differently on the basis of whether or not they have hardship tenants." *Id.*

The court finds that because the purpose of RCW 59.18.440, implemented through the TRAO, is to assist low-income tenants who are displaced by redevelopment, it is rational to apply the ordinance solely to residential property owners with low-income tenants living in their properties who intend to displace such tenants by redevelopment. The tailored application of the TRAO is a rational approach as it affects only those property owners who intentionally cause low-income tenants to relocate in order to allow redevelopment.[8]

Because the classifications provided in RCW 59.18.040 and the TRAO are "rationally related to a legitimate state interest," *Kawaoka,* 17 F.3d at 1238, the court finds that the constitutional guarantees of equal protection are not violated.

## D. Takings Without Just Compensation

■ Plaintiffs allege that the TRAO, as authorized by RCW 59.18.440, takes their property without just compensation in violation of the United States and Washington Constitutions. As a preliminary matter, the court GRANTS summary judgment for defendants on the facial takings challenge brought by any members of the plaintiff class who did not own their property at the time of the enactment of the TRAO. Facial takings claims "necessarily rest on the premise that an interest in property was taken from [the affected] owners upon the [ordinance's] en-

---

7. The parties have also stipulated that "[e]xcept for the Seattle Housing Authority, all owners of residential units containing low-income tenants who applied for permits to demolish, rehabilitate, change the use of, or remove use restrictions from residential units after passage of the TRAO, are treated alike under the TRAO." Stip. of Fact 20.

8. The TRAO only applies to displacement from residential units which are subject to demolition, change of use, substantial rehabilitation, or removal of use restrictions. It does not apply, for example, to displacement caused by natural disaster. SMC 22.210.040(A).

actment.... In a facial taking, the harm is singular and discrete, occurring *only* at the time the statute is enacted." *Carson Harbor Village Ltd. v. City of Carson,* 37 F.3d 468, 476 (9th Cir.1994) (emphasis in original).

■ The parties have stipulated that the "TRAO does not compel any of the plaintiffs to submit to the physical occupation of any of their property." Stip. of Fact 6. The parties have also stipulated that the "TRAO does not deny any of the plaintiffs of all economically viable use of their property," Stip. of Fact 7, and that the "TRAO did not prevent the named plaintiffs from developing their properties." Stip. of Fact 17. Therefore, the TRAO has not effected a per se taking of plaintiffs' property. *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, ———––——, 112 S.Ct. 2886, 2893–95, 120 L.Ed.2d 798 (1992). Thus, the court must consider whether plaintiffs have suffered an unconstitutional taking other than a physical taking of their real property.

In *Commercial Builders of Northern California v. Sacramento,* 941 F.2d 872 (9th Cir. 1991), the court determined that the takings test for "regulations that do not constitute a physical encroachment on land" is whether the ordinance is "reasonably related to legitimate public purposes." *Id.* at 874. Based on the court's above findings, including the finding that the TRAO reasonably serves the interests it was designed to protect, and the parties' stipulation that "[p]rotecting and assisting residential tenants, especially low-income tenants, who are being displaced by private development is a legitimate public purpose," Stip. of Fact 10, the court finds that RCW 59.18.440 and the TRAO meet the test set out in *Commercial Builders.*

Plaintiffs argue that the challenged legislation must withstand a higher level of scrutiny pursuant to *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) and *Dolan v. City of Tigard,* —— U.S. ——, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). However, the Ninth Circuit in *Commercial Builders* indicated that *Nollan* did not change the level of scrutiny to be applied to regulations which did not constitute physical encroachments on land. *Commercial Builders,* 941 F.2d at 874.

The Supreme Court in *Dolan* also distinguished that case from prior takings cases by noting that *Dolan* involved "an adjudicative decision to condition ... a building permit on an individual parcel" instead of a city-wide classification and required petitioner to "deed portions of the [regulated] property to the city." *Dolan,* —— U.S. at ——, 114 S.Ct. at 2316. However, even if *Nollan* and *Dolan* are relevant to the challenge to RCW 59.18.440 and the TRAO, the court finds the enactments are facially constitutional, as set forth below.

### 1. Nollan

■ The Supreme Court in *Nollan* required that the regulation at issue " 'substantially advance' the 'legitimate state interest' sought to be achieved." *Nollan,* 483 U.S. at 834, n. 3, 107 S.Ct. at 3147, n. 3 (quoting *Agins v. Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980)). The Ninth Circuit in *Commercial Builders* described the *Nollan* test as follows: "*Nollan* holds that where there is no evidence of a nexus between the development and the problem that the exaction seeks to address, the exaction cannot be upheld." *Commercial Builders,* 941 F.2d at 875. Plaintiffs argue that this essential "nexus" is lacking between the TRAO and the legitimate state interest sought to be advanced, alleging that the legitimate state interest of "[p]rotecting and assisting residential tenants, especially low-income tenants, who are being displaced by private development," Stip. of Fact 10, is not substantially advanced by the provisions of the TRAO. Plaintiffs argue that the "TRAO is aimed at tenants' financial problems, not plaintiffs' relocation impacts, and imposes exactions out of proportion to the cost of relocating." p. 13, Plaintiffs' Memo. in Support of Summ. Judg. However, plaintiffs stipulated that:

> [o]ne of the ways in which the TRAO protects and assists low-income tenants subject to displacement from their rental units ... is to pay each of them $2000 for the purpose of relocation assistance, half paid by the City of Seattle and half by the owner of the property ...

Stip. of Fact 11. This stipulation acknowledges that the TRAO does indeed serve the purpose of assisting low-income tenants who are displaced by private development.

In addition, the court finds that the TRAO does address some of the impact of the redevelopment plaintiffs have chosen to undertake. Plaintiffs argue that their redevelopment affects all residential tenants in their buildings, not just low-income tenants. This is no doubt true, but does not invalidate the TRAO. Merely because the provisions of the TRAO address only the impact upon those who are most negatively affected by the redevelopment, namely those least able to afford the costs of relocating, the nexus between the problem to be addressed and the requirements of the TRAO is not lessened. Rather, it enhances that nexus. The problem addressed by the TRAO is not the cost of relocating generally, but the cost to those tenants least able to afford it. Therefore, the court finds that if the standard set out in *Nollan* applies to the challenge to RCW 59.18.440 and the TRAO, the standard has been met.

*2. Dolan*

■ In *Dolan,* the Supreme Court required that there be a "rough proportionality" between the "required dedication [of land]" and the "nature and extent [of] the impact of the proposed development." *Dolan,* —— U.S. at —— ——, 114 S.Ct. at 2319–20. Plaintiffs draw an analogy between the requirement to pay half of the relocation money to low-income tenants pursuant to the TRAO and the requirement in *Dolan* that the landowner deed portions her real property to the city.

The court finds that there is at least a "rough proportionality" between the redevelopment of plaintiffs' property and the economic hardship placed on low-income tenants by displacement resulting from this redevelopment. The court also finds that it is reasonable to impose a portion of this cost upon the owners who choose to redevelop their property, thereby displacing their low-income tenants.

As noted above, the parties have stipulated that

[o]ne of the ways in which the TRAO protects and assists low-income tenants subject to displacement from their rental units ... is to pay each of them $2000 for the purpose of relocation assistance, half paid by the City of Seattle and half by the owner of the property from which the low-income tenants are to be displaced ...

Stip. of Fact 11.

The parties also stipulated that the "amount of relocation assistance to be paid by an owner" is "one-half of the amount the City found it will cost an average tenant to relocate," Stip. of Fact 14, and that the amount required to be paid is "proportionate to the number of low-income persons the owner intends to displace." Stip. of Fact 15. Finally, the parties agreed that "[d]emolishing, changing the use of, or substantially rehabilitating the units in which tenants live causes the tenants to leave and requires them to locate other housing," Stip. of Fact 19, and that "[o]ne reason low income tenants receive relocation assistance, while other tenants do not, is that low income tenants are more likely not to be able to afford to move." Stip. of Fact 27. The court finds that *Dolan's* "rough proportionality" test is met by the provisions of RCW 59.18.440 and the TRAO.

In sum, the court finds that even if the *Nollan* and *Dolan* tests apply to plaintiffs' facial challenge to RCW 59.18.440 and the TRAO, no unconstitutional taking has occurred.

*E. Improper Tax*

■ Plaintiffs allege that RCW 59.18.440 authorizes and the TRAO imposes a tax for a private purpose. Therefore, plaintiffs' argue, the enactments violate Article VII, § 1 of the Washington State Constitution which provides, in pertinent part, that "[a]ll taxes shall be ... levied and collected for public purposes only." Plaintiffs argue that "the TRAO's primary purpose is to raise revenue, not to regulate development. The money collected from owners is simply passed on to tenants. There is no regulatory purpose underlying the payment of relocation assistance." p. 22, Plaintiffs' Memo. in Support of

Summ. Judg. Therefore, argue plaintiffs, the TRAO imposes an unlawful tax.

The court finds that the relocation assistance required by the TRAO and authorized by RCW 59.18.440 does not constitute a tax. In *Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guaranty Asso.,* 83 Wash.2d 523, 538, 520 P.2d 162 (1974), the Washington Supreme Court determined that assessments levied against insurance companies to fund a pool to pay the claims of insolvent companies was not a tax. The court found that "[n]o accession to the public revenue ... is authorized or aimed at. The purpose of the exaction is entirely different. It is to be used, not to meet the current expenses of government, but to recompense employees [of the insureds]." *Id.* at 538, 520 P.2d 162. Similarly, the payments required by the TRAO are either paid to the eligible low-income tenants or returned to the owners. No relocation funds are kept by the City. Thus, RCW 59.18.440 and the TRAO do not authorize or aim to accomplish any "accession to the public revenue" and do not authorize or impose a tax. *See Hillis Homes, Inc. v. Snohomish County,* 97 Wash.2d 804, 809, 650 P.2d 193 (1982) ("Taxes are imposed to supply revenue for the public treasury.") (quoting *State ex. rel. Nettleton v. Case,* 39 Wash. 177, 182, 81 P. 554 (1905)). In addition, the court finds that were the imposition of relocation costs deemed a tax, it would not be unlawful as a "public purpose" would be served.

Therefore, the court finds that RCW 59.18.440 and the TRAO do not authorize or impose a tax prohibited by Art. VII, § 1 of the Washington Constitution.

### III. CONCLUSION

Based on the foregoing, the court GRANTS defendants' motion for summary judgment and DENIES plaintiffs' cross-motion for summary judgment as follows:

1) RCW 59.18.440 and the TRAO do not violate the substantive due process protections of the state and federal constitutions;

2) RCW 59.18.440 and the TRAO do not violate the guarantees of equal protection under the state and federal constitutions;

3) RCW 59.18.440 and the TRAO do not take property in violation of the state or federal constitutions;

4) RCW 59.18.440 and the TRAO do not violate Article VII, § 1 of the Washington State Constitution;

5) Defendants' motion to strike any arguments concerning plaintiffs' as-applied challenge is GRANTED; and

6) Plaintiffs' requests for refunds of the monies paid for relocation assistance are DENIED.

The court finds oral argument in this matter unnecessary.