State of Vermont v. Wayne G. Mills, Talmage B. Jestice, Jr., Donald J. Rhinehart and Jeremy J. Starr

[706 A.2d 953]

Nos. 96-337, 96-630, 96-643 & 97-004

Present Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed January 2, 1998

*William H. Sorrell,* Attorney General, and *David Tartter,* Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Robert J. Appel,* Defender General, and *William A. Nelson,* Appellate Attorney, Montpelier, for Defendants-Appellants.

**Dooley, J.** Each of these four criminal cases was decided adversely to defendant by a three-justice panel convened pursuant to V.R.A.P. 33.1. Defendants now request that the full Court vacate the decisions, arguing that judicial action by less than a full complement of five justices of the Supreme Court is constitutionally deficient under Chapter II, §§ 29, 31 of the Vermont Constitution. We disagree and deny the motions to vacate.

Acting in response to the large backlogs and excessive delays that had developed in its operations, this Court in 1990 established a special summary procedure for simpler cases, primarily those applying settled law to the facts involved. Under the procedure, cases are screened and, if all members of the Court not disqualified agree, set before a panel of three justices. See V.R.A.P. 33.1(a). Cases heard by three justices must be decided by unanimous opinion. See *id.* 33.1(b). If the three justices are unable to agree on a disposition, the matter is reset before the full Court for disposition. See *id.*

Cases heard by three justices are decided by entry order, normally issued on the day after argument or on-brief consideration, or shortly thereafter. See Reporter's Notes, V.R.A.P. 33.1. Because of the prompt disposition of these cases, the summary disposition procedures have come to be known as the "rocket docket."

Each of the four cases involved in this review was heard by a three-justice court on October 22, 1997, and for each, the unanimous disposition was to affirm the trial court conviction or sentence. For each, the disposition was memorialized in an entry order issued on October 23, one day after the argument. Each of the entry orders gave a full statement of the reasons for the decision.

Appellants' main written argument is that the Vermont Constitution specifies that the Supreme Court is made up of five justices and, thus, only five justices can hear and decide a case. At oral argument, they modified their position and claimed a case could be heard and decided by fewer than five justices in case of disqualification or illness, or a vacancy in the Court, but not where all justices are available to participate. The source of their position is Chapter II, § 29 of the Vermont Constitution, which provides:

§ 29. **The supreme court; composition**
The Supreme Court shall consist of the Chief Justice of the State and four associate justices of the Supreme Court.

They also rely on similar language in 4 V.S.A. § 4(a) and *Suitor v. Suitor*, 137 Vt. 110, 111, 400 A.2d 999, 1000 (1979).

■ Neither the constitution nor the statutes specify a quorum for the Supreme Court. In the absence of a governing provision, the common law provides that a majority of a judicial body is a quorum. See generally H. Cunningham, *The Problem of the Supreme Court Quorum*, 12 Geo. Wash. L. Rev. 175, 175-76 (1943). We see no reason not to apply the common law in this case. See 1 V.S.A. § 271 (the common law "as is applicable to the local situation and circumstances and is not repugnant to the constitution or laws shall be laws in this state"). Indeed, the Legislature has provided that whenever joint authority is given to a body of three or more, "the concurrence of a majority of such number shall be sufficient and shall be required in its exercise." 1 V.S.A. § 172.

Although three justices can, and have, exercised the authority of the Supreme Court on the four cases before us, appellants would have us rule that their actions are defective because the remaining two justices have not voted for the outcome. They argue that the Constitution requires a collective process of deliberation of all justices. There is no claim that the result could, or would, be different since a majority of the Court has stated its opinion. Nor are the justices who did not vote on the merits excluded from participation. Unless either or both of these justices were disqualified, both had to vote affirmatively to have the case referred to the three-justice panel and could ensure their right to vote on the outcome by refusing to vote for the reference.

The case of *Suitor v. Suitor* does not support appellants' position. In that case, the presiding judge of the superior court purported to act alone even though the governing statute provided that the court

consisted of the presiding judge and the two assistant judges, "any two of whom shall be a quorum." 137 Vt. at 111, 400 A.2d at 1000. We held that the presiding judge, acting alone, "did not constitute a statutory court" and that the "purported order is without basis in law." *Id. Suitor* would instruct that a decision on the merits by less than a quorum of this Court is ineffective. It does not suggest that a decision by only a quorum of the Court is ineffective.

The appellants' argument would impose a constitutional strait-jacket over the decisional processes of this Court. The Constitution specifies the membership of the Court, but provides no detailed direction on how those members are to reach their decisions. As the Supreme Court of Louisiana stated in response to a similar challenge:

> There is nothing . . . in the [Louisiana] Constitution requiring that all of the seven members of the court shall be present and participate in the hearing and deciding of every case. All that the Constitution requires in that respect is in section 4 of Article VII, declaring that the court shall be composed of seven members, four of whom shall concur to render a judgment when the court is sitting en banc, meaning when the court is not sitting in sections.

*Jackson v. United Gas Public Serv. Co.*, 198 So. 633, 643 (La. 1940); see also *Dauzat v. Allstate Ins. Co.*, 242 So. 2d 539, 546 (La. 1970) (it is not necessary that entire membership of the Louisiana Court of Appeals be present or sitting on the bench for en banc cases; "[a]ll that is required is a majority of the complement of the court").

In the only decision from the highest court of a state on point, the nine-member Mississippi Supreme Court upheld its power to sit in panels of five as long as the panel rendered a unanimous decision. *Ryan Supply Co. v. Brett*, 75 So. 2d 721, 721-22 (Miss. 1954). It stressed that five judges was a quorum, and the disagreement of any member of the quorum would automatically send the case to the full court for decision. It concluded that full-court consideration was unnecessary "since the votes of the Judges who originally considered the case, being five in number, would control the decision to be rendered by the entire group of nine." *Id.* at 721; see also *Russell v. State*, 312 So. 2d 422, 424 (Miss. 1975) (reaffirming *Ryan Supply Co.*).

We recognize, as appellants argue, that this is a deliberative body and collective deliberation can in some cases determine the outcome. We stress, however, that V.R.A.P. 33.1 requires that each justice participate in each case. It recognizes, however, that in some cases

that participation need not go beyond a decision that the case is relatively simple and five-justice deliberation is unnecessary to a just result.

Moreover, we are unable to find the requirements appellants seek to impose in the constitutional language. Some state constitutions, for example, specify the membership of an appellate court and go on to require that the members participate in each case. See Ill. Const. art. VI, § 5 (providing for structure and operation of Illinois Court of Appeals); *Cirro Wrecking Co. v. Roppolo*, 605 N.E.2d 544, 550-51 (Ill. 1992). Our Constitution has no such requirement.

Nor can we find in the constitutional language the distinctions appellants would draw to determine when it is valid for the Court to sit with fewer than five members. They recognize the ability of the Court to sit without a full complement for some practical considerations, for example, illness of a justice, probably because that power is widely recognized. See, e.g., *Commonwealth v. Petrillo*, 16 A.2d 50, 58 (Pa. 1940). But, appellants do not recognize a like power for other practical reasons, for example, to produce expeditious decisions in the face of increases in workload. If the constitutional provision means that five justices must be sitting to hear and decide a case, then it contains no exception for disqualification, illness or vacancy; nor does it countenance the statutory procedure of assignment of trial judges or retired justices to the Court to provide a full complement for a particular case. See 4 V.S.A. § 22. The absence of any consideration of practicalities in the constitutional language reinforces our view that it was not intended to cover how many justices must sit in any case.

Appellants also argue that the three-justice panel system violates Chapter II, § 31 of the Vermont Constitution. That section authorizes the division of all courts "except the Supreme Court" into "geographical and functional" divisions. *Id.* Appellants argue that the "rocket docket" represents a functional division of the Supreme Court according to the difficulty of cases, and the section prohibits the creation of functional divisions of the Supreme Court.

The language on which appellants rely was added in the 1974 amendments to the Vermont Constitution. Much of the language for the 1974 amendments dealing with the judicial branch was taken from the Sixth Edition of the Model State Constitution, drafted by the National Municipal League in 1963 [hereinafter Model State Const.]. See generally J. Dooley, *The Regulation of the Practice of Law, Practice and Procedure, and Court Administration in Vermont — Judicial or Legislative Power?*, 8 Vt. L. Rev. 211, 240-41 (1983). The

language on which appellants rely was taken from § 6.01 of the Model State Constitution, which provides for the creation of three courts: supreme court, appellate court and general court. It goes on to provide that "[a]ll courts except the supreme court may be divided into geographical departments or districts as provided by law and into functional divisions and subdivisions as provided by law or by judicial rules not inconsistent with law." Model State Const. art. VI, § 6.01. The comment to the section explains the intent: "Each of these [courts] except the supreme court may be divided into geographical departments, or into functional divisions, i.e., civil, criminal, domestic relations, probate, etc., as may be necessary." Model State Const. art. VI introd. cmt. at 78. The comment acknowledges that in response to caseload pressures "some states have occasionally found it necessary to split the supreme court into two or more separate panels to dispose of more cases" without suggesting that this practice would be prohibited by the constitutional provisions. *Id.*

We cannot read Chapter II, § 31 as prohibiting three-justice court panels as currently provided for in V.R.A.P. 33.1. At the outset, we doubt that the summary procedure involves a "division" of the Supreme Court as the term is used in § 31. The term is used in the Model State Constitution in the context of a single unified trial court. As the comment reflects, the language was chosen to authorize jurisdictionally separate structural divisions, much like our district, superior and family courts. It stretches the language to suggest that it covers differential caseflow management procedures within one court. All cases within the Supreme Court are handled by one Court without jurisdictional lines. The fact that the full Court chooses to handle a particular case in a special way does not create a special division of the Court.

Nor could we find any division to be "functional" as appellants argue. The drafting comment makes clear that the term "functional divisions" is used as a synonym for divisions based on the substantive nature of the case being heard. The summary procedure created by Appellate Rule 33.1 does not depend on the substantive nature of the case being heard.

In *Wolfe v. Yudichak*, 153 Vt. 235, 254, 571 A.2d 592, 603 (1989), we held that the power of judicial assignment is a judicial power to administer this Court given to us by Article II, § 30 of the Constitution. We upheld our consistent policy that "a justice who resigns or retires from this Court after hearing a matter may participate fully in consideration of the case thereafter." *Id.* at 253, 571 A.2d at 602. We

stressed that we must control the management of the courts to fulfill our obligation to provide justice to those who appear before us. The summary procedure created by V.R.A.P. 33.1 is a caseflow management policy adopted to enable us to respond to our caseload with the resources available. It falls squarely under the power given to us by § 30.

We conclude that there is no constitutional impediment to the summary procedure created by V.R.A.P. 33.1. Accordingly, appellants' motions to vacate the mandates affirming their convictions and sentences are denied.

*Motions to vacate denied.*