Mr. Gregory R. Dallaire, Chair Commission on Judicial Conduct PO Box 1817 Olympia, WA 98507-1817
Dear Mr. Dallaire:
You have asked our opinion on the following three questions regarding the ability of the Commission on Judicial Conduct (Commission) to adopt rules to separate the investigative and adjudicative functions of the Commission:
 Question 1: Can the Commission divide its eleven members into separate investigatory and adjudicative panels to separate the functions under and within its current constitutional authority?
 Question 2: If the answer is no, does the Commission have the authority to use a member's alternate to separate the investigatory and adjudicatory functions? For example, could the Commission adopt a rule stating that, on the motion of a respondent, Commission members who participated in the investigatory stage would recuse themselves, and the Commission would empanel such members' alternates for the adjudicative phase of the proceeding?
 Question 3: In the alternative, would it be constitutional for the Commission to divide its members and alternates into two separate eleven-member panels, one panel to participate in the investigatory stage and the other in the adjudication?
These questions arise from concerns about whether the Commission is perceived as able to deal fairly with parties before it in an adjudicatory proceeding when it also performs nonadjudicatory functions, such as investigations and institution of proceedings. You write: "The Constitution combines the investigatory/probable cause and adjudicatory functions in the commission. It has been proposed to the Commission that performing these two functions by the same members in a single proceeding gives rise to an appearance of unfairness. Although the Constitution also mandates de novo proceeding for any appeals or review of Commission decisions, the Commission prefers to adopt rules of procedure that would separate the investigative and adjudicative functions."
For the reasons stated below, we believe the Commission lacks the authority to adopt such rules to separate the investigative and adjudicative functions of the Commission. We first set forth the background of the composition of the Commission and its functions. We then analyze the legality of each alternative configuration.
 BACKGROUND
The Commission is a constitutionally created independent agency of the judicial branch charged with investigating complaints regarding the misconduct or disability of judges. The Washington State Constitution (constitution) authorizes the Commission to conduct public hearings; admonish, reprimand, or censure a judge or justice; and to recommend to the Supreme Court the suspension, removal, or retirement of a judge or justice. The constitution establishes the composition of the Commission and outlines the steps the Commission is to take in acting on the complaints. Additionally, the constitution gives the Commission authority to establish rules of procedure for Commission proceedings. We begin with an overview of these constitutional provisions and the rules of procedure. A copy of the full text of article IV, section 31 is attached to this opinion.
 COMPOSITION OF THE COMMISSION
The Commission consists of eleven members. Six of these members must be persons who are not attorneys, appointed by the Governor. Three of the members are judges: a judge selected by and from the court of appeals judges, a judge selected by and from the superior court judges, and a judge selected by and from the district court judges. The remaining two members are lawyers admitted to the practice of law in this state, selected by the Washington State Bar Association. Const. art. IV, § 31(1); RCW 2.64.020. The Legislature has provided for alternate Commission members "to serve during a member's temporary disability, disqualification, or inability to serve." RCW 2.64.030 provides:
 Commission membership shall terminate if a member ceases to hold the position that qualified him or her for appointment. Vacancies caused by disqualification or resignation shall be filled by the appointing authority for the remainder of the term. No person may serve more than two consecutive four-year terms. A person may be reappointed after a lapse of one year. A member, rather than his or her successor, shall continue to participate in any hearing in progress at the end of his or her term, or when the member ceases to hold the position that qualified him or her for appointment. The appointing authority shall appoint an alternate to serve during a member's temporary disability, disqualification, or inability to serve. No member may otherwise be removed from the commission before the end of his or her term except upon good cause found by the appointing authority.
(Emphasis added.)
 FUNCTIONS OF THE COMMISSION
The constitution assigns to the Commission several functions and decisions that can be divided into three stages: investigation, initial proceedings/probable cause, and hearings. Each stage is summarized below.
Investigation: Article IV, section 31(2) provides the Commission shall investigate complaints or beliefs of a judge's misconduct or disability. An investigative officer undertakes the investigation on behalf of the Commission.[1] Commission on Judicial Conduct Rules of Procedure (CJCRP) Rule 17(a). The investigative officer assembles the complaint and additional information for each Commission member to consider. CJCRP 17(d)(1). After initial review and evaluation, the Commission may dismiss the complaint, continue investigation, or commence initial proceedings. Id.
Initial Proceedings/Probable Cause: Article IV, section 31(2) provides that following an investigation, the Commission shall "conduct initial proceedings for the purpose of determining whether probable cause exists for conducting a public hearing or hearings to deal with the complaint or belief." If the Commission moves the matter to initial proceedings, the Commission provides the judge with a statement of allegations and a reasonable opportunity to respond. CJCRP 17(e)(1). After the initial proceedings, the Commission either dismisses the case, stays the proceedings, or finds that probable cause exists to believe respondent may have violated a rule of judicial conduct or may be suffering from an incapacity that seriously interferes with the performance of judicial duties and is permanent or likely to become permanent. CJCRP 17(e)(4). If the Commission determines such probable cause exists, it orders the filing of a statement of charges. CJCRP 17(e)(3). The Commission identifies the records of the initial proceedings that are the basis for the finding. Const. art. IV, § 31(3); CJCRP 17(e)(4)(C).
Hearing: The constitution requires the Commission to conduct public hearings whenever it concludes there is probable cause to believe a judge or justice has violated a rule of judicial conduct or suffers from a disability that seriously interferes with the performance of judicial duties and is permanent or likely to become permanent. Const. art. IV, § 31(3). Disciplinary counsel, a lawyer retained by the Commission, presents the case in support of the statement of charges. CJCRP 24(b)(2). Upon the completion of a hearing, the Commission either dismisses the case; admonishes, reprimands, or censures the judge or justice; censures the judge or justice and recommends to the Supreme Court the suspension or removal of the judge or justice; or recommends to the Supreme Court the retirement of the judge or justice because of a disability. Const. art. IV, § 31(4); CJCRP 6(b) and 24(c). If the Commission admonishes, reprimands, or censures a judge or justice, the constitution provides that "the judge or justice shall have a right of appeal de novo to the supreme court." Const. art. IV, § 31(6). Similarly, if the Commission recommends that the Supreme Court suspend, remove, or retire a judge or justice, the Supreme Court conducts a hearing to review the commission proceedings and findings. Const. art. IV, § 31(5). Recommendations of the Commission are subject to de novo review by the Supreme Court. In re Deming, 108 Wn.2d 82, 87-88, 736 P.2d 639 (1987).
Rulemaking: The Commission has explicit constitutional authority to establish rules of procedure for its proceedings, including rules necessary to provide due process:
 The commission shall, to the extent that compliance does not conflict with this section, comply with laws of general applicability to state agencies with respect to rule-making procedures, and with respect to public notice of and attendance at commission proceedings other than initial proceedings. The commission shall establish rules of procedure for commission proceedings including due process and confidentiality of proceedings.
Const. art. IV, § 31(10) (emphasis added).
Your letter notes: "It has been proposed to the Commission that performing these [investigatory/probable cause and adjudicatory] functions by the same members in a single proceeding gives rise to an appearance of unfairness." This reflects a nationwide debate on whether a one-tiered or two-tiered judicial disciplinary system best serves the goals of fairness to respondent judges and protection of the public. The American Bar Association Model Rules for Judicial Disciplinary Enforcement recommend that a judicial conduct commission divide itself into a hearing panel and an investigative panel, with the provision that no member shall sit on both the hearing and investigative panel for the same proceeding. Rule 3.1 Organization and Authority of the Commission: Panels and Meetings.
Your letter indicates that the Commission prefers to adopt rules of procedure that would separate the investigative and adjudicative functions. You ask about the authority of the Commission to adopt three types of rules that would address these concerns. We answer each question in turn.
Question 1: Can the Commission divide its eleven members intoseparate investigatory and adjudicative panels to separate thefunctions under and within its current constitutional authority?
 BRIEF ANSWER
No. We do not believe the Commission has the authority to adopt rules to divide the Commission into panels. There are several reasons for this conclusion. First, the constitution specifies both the composition of the Commission and the decisions that are to be made by the Commission. Panels that do not reflect the same balance of membership from different groups as the Commission cannot make decisions that the constitution commits to the "commission". Additionally, a division into two panels would necessarily require that one panel or the other would not constitute a quorum of the Commission. Without a quorum of the Commission, a panel would not have authority to act on behalf of the Commission. Finally, authority to divide the Commission into two panels cannot be implied from the Commission's constitutional mandate to "establish rules of procedure . . . including due process." Const. art. IV, § 31(10). Due process does not require separation of the investigatory and adjudicatory functions.
 ANALYSIS
We begin our analysis with the words of the constitution. Article IV, section 31 establishes the composition of the Commission, and outlines the steps "the commission" shall take in addressing complaints of judicial misconduct or disability. The first subsection establishes the Commission and its composition:
 There shall be a commission on judicial conduct, existing as an independent agency of the judicial branch, and consisting of a judge selected by and from the court of appeals judges, a judge selected by and from the superior court judges, a judge selected by and from the district court judges, two persons admitted to the practice of law in this state selected by the state bar association, and six persons who are not attorneys appointed by the governor.
Const. art. IV, § 31(1).
The constitution then specifies functions to be performed by "the commission," including investigation, commencement of an initial proceeding, a determination of probable cause, the conduct of public hearings, and decisionmaking at the conclusion of the hearings. Article IV, section 31(2) provides "the commission shall first investigate the complaint or belief and then conduct initial proceedings for the purpose of determining whether probable cause exists for conducting a public hearing or hearings to deal with the complaint or belief." If the Commission determines probable cause exists, article IV, section 31(3) provides the Commission is to hold a public hearing. At the conclusion of the public hearing, "the commission" makes a decision as outlined in article IV, section 31(4):
 Upon completion of the hearing or hearings, the commission in open session shall either dismiss the case, or shall admonish, reprimand, or censure the judge or justice, or shall censure the judge or justice and recommend to the supreme court the suspension or removal of the judge or justice, or shall recommend to the supreme court the retirement of the judge or justice.
The plain reading of these constitutional provisions directing "the commission" to undertake certain tasks or make certain decisions is that the Commission as a body is to make the decision at each stage of the proceedings. "Where the words of a constitution are unambiguous and in their commonly received sense lead to a reasonable conclusion, it should be read according to the natural and most obvious import of its framers. . . ." State ex rel. O'Connell v. Slavin, 75 Wn.2d 554, 558, 452 P.2d 943
(1969).
Adherence to this constitutional scheme would not be possible if the Commission were divided into panels, for two reasons. First, to divide the Commission into panels would result in a multi-member panel of a composition different from the Commission making decisions that the constitution has committed to the Commission as a full body. Second, one of the panels would necessarily comprise less than a majority of the Commission, and thus would not, in our opinion, have authority to take action. We discuss each of these reasons in turn.
As you noted in your letter, "The relative number of judicial, attorney and lawyer members was a central part of the 1989 Constitutional amendment." This view is confirmed by the legislative history. In the 1989 Voters Pamphlet, the "Statement for Senate Joint Resolution 8202" noted: "The membership of the commission is increased and non-lawyers are given a majority of the membership." The nature of the Commission's membership was also emphasized in the 1986 Voters Pamphlet Statement for Senate Joint Resolution 136, which increased the Commission to nine members by adding two people who are not attorneys: "By expanding the commission to include two additional non-lawyer public members, a broader, more representative commission to address judicial conduct will be created." A report by the Commission on Washington Courts emphasized the importance of the attorney members, noting: "There is no question but that in many cases the experience and point of view of a practicing attorney is a vital ingredient in evaluating judicial conduct." Board for Judicial Administration, Commission on Washington Courts: Report of Findings and Recommendations on Proposed Legislation at 7 (March 1989). Thus, the makeup of the Commission and inclusion of each of the members in decisionmaking is of constitutional significance. Dividing the Commission into panels would alter the composition and the balance of the groups represented in making a decision the constitution commits to the Commission.
Additionally, a division into two panels would necessarily require that one panel or the other would be comprised of less than a majority of the Commission. In the absence of a governing provision, the common law provides a majority of a judicial body is a quorum. See State v. Mills, 706 A.2d 953 (Vt. 1998).[2]
Thus, a division into two panels would also have the obvious problem of one panel being unable to take action.[3]
We have also considered whether the authority to divide the Commission into two panels can be implied from the Commission's constitutional mandate to "establish rules of procedure . . . including due process" and conclude that dividing the Commission into separate panels would go beyond the authority provided by article IV, section 31(10). Due process does not require separation of the investigatory, prosecutory, and adjudicatory functions.
It is well-settled that due process is not violated by a constitutional or statutory scheme that gives a multi-member commission the power to investigate the facts, institute proceedings, and then make the necessary adjudications. In Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712
(1975), the Supreme Court held the combination of investigative and adjudicative functions, without more, does not constitute a due process violation by creating an unconstitutional risk of bias. In that case, the Supreme Court upheld a state law that permitted Wisconsin's State Board for the Examination of Physicians to conduct investigative proceedings, institute charges, hold a hearing, and adjudicate the charges.
The Washington Supreme Court has found this combination of functions comports with federal due process, and with state law principles of appearance of fairness. In Medical Disciplinary Bd. v. Johnston, 99 Wn.2d 466, 633 P.2d 457 (1983), the court stated:
 We are convinced the mere combination of adjudicative and investigative powers in one agency, without more, would not be viewed by a reasonably prudent and disinterested observer as denying any party a fair, impartial, and neutral hearing.
Id. at 479-80.
This principle has been applied in the context of judicial conduct proceedings. In In re Deming, 108 Wn.2d 82, 736 P.2d 639 (1987), Judge Deming argued that combination of the investigatory, prosecutory, and adjudicatory functions in one body violated due process and the appearance of fairness. The court found no violation of due process or appearance of fairness.[4] In addition, the availability of de novo review by the Supreme Court provides due process protections. Id. at 94.
While upholding processes that combine these functions, courts have recognized that there is a legitimate basis for debate on the degree of separation of functions that is appropriate as a policy matter. In Withrow, 421 U.S. at 51, the Supreme Court noted:
 That is not to say that there is nothing to the argument that those who have investigated should not then adjudicate. The issue is substantial, it is not new, and legislators and others concerned with the operations of administrative agencies have given much attention to whether and to what extent distinctive administrative functions should be performed by the same persons.
A similar observation was made by the Connecticut Supreme Court in upholding the combination of investigatory and adjudicatory functions in judicial conduct proceedings. In In re Zoarski,632 A.2d 1114, 1121 (Conn. 1993), the court noted the ABA Model Rules for Judicial Disciplinary Enforcement recommended separation of these functions, but concluded this could be accomplished only through a change in the law: "Although the legislature might decide that public policy would better be served by a division of these functions, it has not yet done so."
The courts' discussions of the risks of unfairness provide guidance for agencies in structuring their duties.[5] First, the Supreme Court's explanation of why due process is not violated by this combination of functions outlines the attitude decisionmakers should bring to their various roles:
The risk of bias or prejudgment in this sequence of functions has not been considered to be intolerably high or to raise a sufficiently great possibility that the adjudicators would be so psychologically wedded to their complaints that they would consciously or unconsciously avoid the appearance of having erred or changed position.
Withrow, 421 U.S. at 57. This statement is followed by a reminder that there is no inconsistency in an initial finding of probable cause to conduct a hearing and a subsequent decision, based on complete evidence presented in a hearing, that a violation has not occurred:
 Indeed, just as there is no logical inconsistency between a finding of probable cause and an acquittal in a criminal proceeding, there is no incompatibility between the agency filing a complaint based on probable cause and a subsequent decision, when all the evidence is in, that there has been no violation of the statute. . . .
The initial charge or determination of probable cause and the ultimate adjudication have different bases and purposes. The fact that the same agency makes them in tandem and that they relate to the same issues does not result in a procedural due process violation. Clearly, if the initial view of the facts based on the evidence derived from nonadversarial processes as a practical or legal matter foreclosed fair and effective consideration at a subsequent adversary hearing leading to the ultimate decision, a substantial due process question would be raised. But in our view, that is not this case.
Withrow, 421 U.S. at 57-58. Consistent with this approach, "[a]lthough one who prejudges adjudicative facts is disqualified from acting in a quasi-judicial function because of bias, mere exposure to adjudicative facts is not a disqualification." Smith v. Mount, 45 Wn. App. 623, 627 (1986).
Also instructive is the Withrow Court's listing of components of the investigative proceeding that avoid risks of unfairness:
 The investigative proceeding had been closed to the public, but appellee and his counsel were permitted to be present throughout; counsel actually attended the hearings and knew the facts presented to the Board. No specific foundation has been presented for suspecting that the Board had been prejudiced by its investigation or would be disabled from hearing and deciding on the basis of the evidence to be presented at the contested hearing. The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing. Without a showing to the contrary, state administrators "are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances."
Withrow, 421 U.S. at 54-55 (footnote omitted), quoting United States v. Morgan, 313 U.S. 409, 421 (1941). The procedures of the Commission follow this guidance. An investigator employed by the Commission performs the actual gathering of evidence, and if the Commission determines to commence initial proceedings, the investigator files a statement of allegations setting forth the nature of the complaint with sufficient specificity to permit a response. CJCRP 17(d)(3).
If the matter proceeds to a public hearing, an attorney employed by the Commission presents the evidence at the hearing. CJCRP 24(b)(2). As noted in Withrow, this approach helps to reduce any risks of prejudice:
 It is asserted by appellants . . . and not denied by appellee that an agency employee performed the actual investigation and gathering of evidence in this case and that an assistant attorney general then presented the evidence to the Board at the investigative hearings. While not essential to our decision upholding the constitutionality of the Board's sequence of functions, these facts, if true, show that the Board had organized itself internally to minimize the risks arising from combining investigation and adjudication, including the possibility of Board members relying at later suspension hearings upon evidence not then fully subject to effective confrontation.
Withrow, 421 U.S. at 54 n. 20.
Having concluded the Commission does not have the authority to divide itself into two panels, we turn to your second question proposing an alternative approach.
Question 2: "If the answer is no, does the Commission have theauthority to use a member's alternate to separate theinvestigatory and adjudicatory functions? For example, could theCommission adopt a rule stating that, on the motion of arespondent, Commission members who participated in theinvestigatory stage would recuse themselves, and the Commissionwould empanel such members' alternates for the adjudicative phaseof the proceeding?"
 BRIEF ANSWER
No. RCW 2.64.030 provides that an alternate shall serve during a member's temporary disability, disqualification, or inability to serve. A member who participated during the investigatory stage does not have a "temporary disability, disqualification, or inability to serve" in the adjudicative phase of the proceeding. Therefore, there is no statutory basis for the Commission to adopt the described rule. Additionally, the constitutional design combines the investigatory and adjudicatory functions in a single commission. The Commission lacks authority to adopt a rule that uses alternates to change this constitutional design.
 ANALYSIS
The circumstances in which alternates serve in the place of a member are outlined in RCW 2.64.030. RCW 2.64.030 provides in part: "The appointing authority shall appoint an alternate to serve during a member's temporary disability, disqualification, or inability to serve." A member who participated during the investigatory stage does not have a "temporary disability, disqualification, or inability to serve" in the adjudicative phase of the proceeding. As a general rule, a judicial officer is "disqualified" from a case in which the judicial officer has an interest or prejudice or otherwise cannot act impartially. See 46 Am.Jur.2d Judges § 46 (1994); see, e.g., Code of Judicial Conduct Canon 3(D); Hill v. Department of Labor Industries,90 Wn.2d 276, 279, 580 P.2d 636 (1978). As discussed above, members who participated in the investigatory stage are not disqualified from participating in the adjudicative phase of a proceeding. Our courts have rejected the view that a combination of investigatory and adjudicative functions or prior exposure to adjudicative facts operates as a disqualification of board members from further proceedings. See Medical Disciplinary Bd. v. Johnston, supra; In re Deming, supra; Olmstead v. Department of Health, 61 Wn. App. 888,812 P.2d 527 (1991); Smith v. Mount, 45 Wn. App. 623, 627,726 P.2d 474 (1986) ("Although one who prejudges adjudicative facts is disqualified from acting in a quasi-judicial function because of bias, mere exposure to adjudicative facts is not a disqualification.").[6]
Further, as discussed in the analysis of Question 1, the constitution contemplates a single Commission that makes decisions at both the investigatory and adjudicatory stages of a proceeding. The constitution left details of the appointment of Commission members to the Legislature, and details of procedure to the Commission. However, neither the Legislature nor the Commission can exercise its powers in a manner contrary to the express or implicit requirements of article IV, section 31. See State ex rel. O'Connell v. Slavin, 75 Wn.2d at 557. Thus, the Commission's power to establish rules of procedure does not extend to changing the constitution's basic design, and a rule that serves to separate functions that the constitution combines would be subject to the challenge that it "transcend[s] the purpose for which the power to adopt it was conferred" and is therefore void. See Robinson v. Peterson, 87 Wn.2d 665, 668, 555 P.2d 1348 (1976).
Question 3: In the alternative, would it be constitutional for theCommission to divide its members and alternates into two separateeleven-member panels, one panel to participate in theinvestigatory stage and the other in adjudication?
 BRIEF ANSWER
No. Alternates may serve only during a member's temporary disqualification, disability, or inability to serve. Dividing the Commission's members and alternates into two separate eleven-member panels would result in alternates serving in circumstances beyond those authorized by statute. Additionally, using alternates in this manner would effectively convert them into full-time members of the Commission. There is no authority for such a rule in the statute, and it is contrary to the constitutional design that combines the investigatory and adjudicatory functions in a single eleven-member Commission.
 ANALYSIS
This proposal would address concerns with the first alternative about decisions being made by a panel with a membership different from the Commission as a whole. However, like the second alternative, it would employ alternates in circumstances beyond those authorized by statute since there is no disability, disqualification, or inability to serve. Additionally, the Legislature has provided for appointment of alternates to serve during the regular member's temporary disability, disqualification, or inability to serve. Temporary is defined in Black's Law Dictionary as "[t]hat which is to last for a limited time only, as distinguished from that which is perpetual, or indefinite, in its duration." Black's Law Dictionary 1464 (6th ed. 1990). There is no authority for adoption of a rule that provides for alternates to serve on a regular basis, without regard to the member's disability, disqualification, or inability to serve. Such a rule would convert a statute that provides for temporary service in specified and limited circumstances into continuing service without regard to the availability of the Commission member. The statute cannot be read to allow this role for alternates. To do so would be somewhat akin to the circumstances in In re Eng,113 Wn.2d 178, 776 P.2d 1336 (1989). In that case, the court held the City of Seattle exceeded its statutory authority when it appointed judges pro tempore in a manner that exceeded the limited term such judges could serve:
 The term "pro tempore" means "[f]or the time being; temporarily; provisionally." Black's Law Dictionary 639 (5th ed. 1983). An indefinitely appointed or continually reappointed judge pro tempore is a contradiction in terms. The time in which a judge pro tempore serves, then, should not run past the next municipal election as envisioned in RCW 35.20.190.
Id. at 193-94.
In addition, application of such a rule would essentially create a Commission of twenty-two members rather than the Commission of eleven members specified by the constitution. Courts have distinguished a temporary limited assignment to facilitate the orderly administration of justice from an action that invests the temporary appointee with the panoply of powers a full member would have. See, e.g., Claremont Sch. Dist. v. Governor, 712 A.2d 612,615 (N.H. 1998) ("While it is clear that the legislature has no prerogative to invest retired justices over age seventy with the panoply of powers associated with judicial office, it does have the constitutional authority to authorize limited temporary assignment of retired justices over age seventy to ensure the adequate and orderly administration of justice."). This proposal would go beyond providing for the orderly conduct of the Commission proceedings, and would change the basic composition and functioning of the Commission. In our opinion, such a rule would be void.
We trust this opinion will be of assistance to you.
Sincerely,
NARDA PIERCE Solicitor General (360) 664-9018
NP/bw
Attachment
[1] Article IV, section 31(9) specifies that the Commission "shall employ one or more investigative officers with appropriate professional training and experience."
[2] CJCRP3(c) provides six members of the eleven-member Commission shall constitute a quorum.
[3] State v. Mills examined the constitutional authority of courts to establish panels where the constitution specified the membership of a court but provided no detailed direction on how the members were to reach their decisions. The court upheld decisions by panels because of several features: justices who were not on the panel were not excluded entirely from consideration of a case; they could ensure their right to vote and participate in deliberations by refusing to vote to refer the matter to a panel; and the panel was comprised of a sufficient number of justices to comprise a majority of the overall judicial body (a quorum). In State ex rel. Vanderveer v. Gormley, 53 Wn. 543, 104 P. 620
(1909), the court relied on a constitutional provision allowing the business of the court to be apportioned to departments when it held a majority vote of all members of the court was not required to pronounce a decision. The court left open the possibility that a majority of the minimum number of judges required by the constitution might be necessary.
[4] The Court noted other factors in the proceedings which weighed against a finding of violation of due process or appearance of fairness, including the fact that the investigation and prosecution of the case were conducted by staff personnel who did not participate in the decisionmaking in the adjudicative proceeding. In re Deming, 108 Wn.2d at 106-07.
[5] It appears the Commission has already adopted most, if not all, of the courts' recommendations, as explained more fully at 10 infra.
[6] A temporary "disability" denotes a circumstance that prevents the officer from the performance of the officer's duties, such as a physical or mental disability (see, e.g., Const. art. IV, § 3(a)), while "inability to serve" could include a broad range of reasons why a member could not participate in Commission proceedings.